## The Chicago and Alton Railroad Company

*v.*

## Theodore Fisher.

*Filed at Springfield May 11, 1892.*

1. Examination of jurors—*putting a hypothetical case.* In an action against a railway company to recover for a personal injury claimed to be the result of the defendant's negligence, the defendant asked three several jurors this question : "If taken upon this jury, and the evidence were equally balanced upon both sides,—just as much one way as the other,—which way would you decide?" which the court refused, on objection of the plaintiff: *Held,* that there was no error in the ruling.

2. The denial of permission, on the preliminary examination of jurors, to obtain from them, by means of hypothetical questions that call for the decision of a question of law, a pre-judgment of the case, and a statement in favor of which party they would decide on a supposed state of evidence, is not error.

3. Same—*former decisions.* The cases of *Chicago and Alton Railroad Co.* v. *Adler,* 56 Ill. 344, *Chicago and Alton Railroad Co.* v. *Buttolf,* 66 id. 347, and *Galena and Southwestern Railroad Co.* v. *Haslam,* 73 id. 494, in respect to the examination of jurors, to the extent they are in conflict with the views expressed in this case, are overruled.

4. Negligence—*question of fact—for the jury—duty of passenger on a railway car.* A return excursion train was so crowded and overloaded that all the seats and standing room in the coaches were occupied, as well as the platforms to the cars and the steps of the same. The plaintiff got on the steps of a front car and was carried to the next station, when a large number of passengers got off. It did not appear that the plaintiff might have got a better or safer position, or that he received any notice by the conductor or any one else that he might find room in some other car, and so he continued to occupy his position on the platform steps until he arrived at another station, when he was pushed off the steps by the crowd of other passengers, and injured: *Held,* that his failure at the first stop of the train to try to find a safer place was not such negligence, as a matter of law, as to preclude a recovery by him, but that the question of his negligence in fact was properly submitted to the jury.

5. A passenger on a railway train does not owe a duty to the company to push and crowd his way in order to get an advantage over other passengers in securing a place within the cars, and it does not follow, as a matter of law, that he will be guilty of negligence for not

so doing. Nor will his duty to the company require that he shall wholly disregard the usual and ordinary courtesies and amenities of life. In fact, it is not necessarily, and as a matter of law, negligence to stand aside and allow ladies to occupy the safest and most desirable positions in a public conveyance.

6. The question of negligence is ordinarily a question of fact to be tried by the jury. It is only when the inference of negligence necessarily results from the statement of facts that the court can properly instruct the jury that such facts establish negligence.

7. Standing or sitting upon the platform or steps of a railway car when the train is in motion, although it may be *prima facie* evidence of negligence, is not under all circumstances negligence *per se* and as a matter of law.

8. Same—*former decisions.* The case of *Chicago, Rock Island and Pacific Ry. Co.* v. *Eininger,* 114 Ill. 79, was decided upon the express ground that the railway company owed no duty not to run its train at a greater rate of speed than six miles an hour to a mere trespasser, who was attempting to climb upon its train in violation of the law of the State, which imposed a fine or imprisonment for so doing. In that case there was no liability of the company, regardless of the question of the negligence or care of the person injured, and it has no application to the facts of this case.

9. The case of *Quinn* v. *Illinois Central Railroad Co.* 51 Ill. 495, is plainly distinguishable from this. There the conceded facts were that there was abundant room in the cars, and the deceased went voluntarily, and without any necessity therefor placed himself upon the platform of a car, while here the facts were quite otherwise.

10. Same—*instruction as to the exercise of ordinary care by plaintiff.* In an action by a passenger for a personal injury received while standing on the steps of the platform, the car being overcrowded, an instruction for the plaintiff stated, in general terms, the duty of ordinary care and prudence on the part of a passenger, and that he was not required by law to exercise extraordinary or the highest degree of care, and that instruction was followed immediately by another, in which the jury were told that by ordinary care the law means such a degree of care under the circumstances and in the situation in which the plaintiff was placed, as an ordinarily prudent man would exercise under like circumstances and in the same situation : *Held,* that the first instruction was not obnoxious to the criticism that it relieved the plaintiff of the additional care placed upon all who take extra-hazardous positions, and relieved him of the duty of exercising care proportioned to the apparent danger of the situation.

11. Instructions—*directing the jury to find for defendant.* Where there is no necessary implication, from the evidence, that the plaintiff

voluntarily and with culpable negligence abandoned a safe place on a railway train and placed himself in an unsafe one, there will be no error in refusing an instruction to find for the defendant, in an action against it to recover damages caused by its negligence.

12. SAME—*whether an instruction assumes a fact.* An instruction that "if the jury believe, from the evidence, that the plaintiff, while in the exercise of ordinary care, was injured by or in consequence of the negligence as charged in the declaration or either one of the counts thereof, then you will find the defendant guilty," does not assume that the defendant was guilty of negligence, as the qualifying words, "if the jury believe, from the evidence," apply to the whole sentence.

13. SAME—*construed—the word "while" defined.* Such an instruction does not require of the plaintiff the exercise of ordinary care at the particular point of time when the injury was received, only, and omit the requirement of care previous thereto. The word "while" means "during the time that," and seems to necessarily imply some degree of continuance.

14. SAME—*that the jury are the sole judges of the credibility of witnesses.* It is not error for the court, in a civil action, to instruct the jury that they are the sole judges of the credibility of the witnesses, and of the weight to be given to the evidence of each and all of them. They are such judges for all the purposes of a jury trial.

15. SAME—*as to preponderance—depending on number of witnesses.* An instruction, "that the preponderance of evidence may not depend entirely upon the number of witnesses testifying on either side of the case," is not error, as practically telling the jury that the greater number of witnesses is no better than the less number. It impliedly concedes that when all other things are equal the greater number must control.

16. APPEAL—*when a constitutional right.* There are only four classes of cases in which there is a constitutional right of appeal or writ of error to this court, and they are, criminal cases, and cases in which either a franchise, a freehold or the validity of a statute is involved.

17. SAME—*sections 2 and 11 of article 6 of the constitution construed together.* Sections 2 and 11 of article 6 of the constitution of 1870 are to be construed together, and when so done, it is plain that appellants in all cases do not have a constitutional right, either direct or through the intermediate courts, of appeal to this court.

18. SAME—*jurisdiction of Supreme Court on appeal.* It is not the intention of the constitution to confer upon this court jurisdiction, absolutely, "in all other cases," but its intention is, that in all cases other than those in which this court is given original jurisdiction, its jurisdiction, whether derived immediately from the constitution itself or derived from an act of the legislature, and wholly regardless of the

fact whether such jurisdiction is in a few or many or all other cases, should be an appellate jurisdiction only.

19. Same—*power of legislature to limit appeals.* Under the constitution the legislature has the power to confer upon this court jurisdiction to review the judgments of the Appellate Court both upon questions of law and questions of fact, or to make the decisions of the Appellate Courts final both as to law and as to fact. Hence it follows the legislature had authority to make the decisions of the Appellate Courts final merely as to questions of fact, and to confer upon the Supreme Court jurisdiction to review upon questions of law, only.

20. Section 89 of the Practice act, in so far as it limits the jurisdiction of the Supreme Court, in cases brought to it by appeal or writ of error from or to the Appellate Court, to the consideration of questions of law, and makes the finding of the facts by the Appellate Court final and conclusive, is a constitutional enactment, and hence a valid law.

21. Same—*question of damages—not reviewable.* In an action against a railroad company to recover for a personal injury received through negligence, the amount of the damages sustained is a question of fact, not open to re-examination in this court.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Menard county; the Hon. Lyman Lacey, Judge, presiding.

Mr. N. W. Branson, and Mr. William Brown, for the appellant.

Messrs. Cameron & Hughes, and Mr. Charles Nusbaum, for the appellee.

Mr. Justice Baker delivered the opinion of the Court:

In this action on the case for personal injuries, the result of the last of four jury trials in the circuit court was a verdict and judgment in favor of appellee for $16,000 damages, and such judgment was affirmed by the Appellate Court. Upon this appeal several questions of a somewhat preliminary nature are submitted for consideration.

While the jury was being impaneled, counsel for appellant asked three several jurors this question: "If taken upon this jury, and the evidence was equally balanced upon both sides,

—just as much one way as the other,—which way would you decide?" The question was objected to by appellee and the objection sustained. Said jurors were, however, fully examined by counsel, and stated that they had no knowledge of the facts of the case, were in no way prejudiced against either of the parties, and knew no reason why they could not try the case fairly and impartially; that they had no prejudice against railroads, and if accepted as jurors would take the law as announced by the court, and follow it, and would not assert their opinion as to the law against the opinion of the court as laid down in the instructions, and that they could and would deal just as fairly with appellant as with appellee, and the fact appellant was a corporation would not affect them in the slightest degree. The three jurors were accepted by appellant and formed part of the jury that tried the case. When the jury was complete, appellant had two peremptory challenges left.

It is claimed that the action of the court in refusing to allow the question to be asked and answered was error,—that it deprived appellant of a means of enabling it to judiciously exercise its right of challenge, both for cause and peremptorily, and was in conflict with the decisions of this court in *Chicago and Alton Railroad Co.* v. *Adler,* 56 Ill. 344, *Chicago and Alton Railroad Co.* v. *Buttolf,* 66 id. 347, and *Galena and Southern Wisconsin Railroad Co.* v. *Haslam,* 73 id. 494. In civil cases it is the absolute duty of jurors to take the law from the court, and they are not supposed to know what the rules of practice are that govern in the progress of a cause through the court. To determine upon which party to a suit is imposed the burden of proof is always a question of law, and at a trial of fact such burden is not always placed upon the plaintiff in the suit. In our opinion, the denial of permission, on the preliminary examination of jurors, to obtain from them, by means of hypothetical questions that call for the decision of a question of law, a pre-judgment of the case,

and a statement in favor of which party they would decide in a supposed state of the evidence, is not error. (*Woolen* v. *Wire*, 110 Ind. 251; *State* v. *Ward*, 14 La. Ann. 673; 1 Thompson on Trials, sec. 102.) The rule announced in *Chicago and Alton Railroad Co.* v. *Adler, supra,* and in *Chicago and Alton Railroad Co.* v. *Buttolf, supra,* was followed in *Galena and Southern Wisconsin Railroad Co.* v. *Haslam, supra,* but by a divided court, and merely upon the ground "the point has been once decided;" and in the later case of *Richmond* v. *Roberts,* 98 Ill. 472, the doctrine of those cases was not followed, but was criticised, and was so far modified as to be virtually abrogated. Moreover, to hold in this case that the mere sustaining of an objection to the particular question now under consideration is reversible error, would seem, in principle, to be inconsistent with the decision in *Spies et al.* v. *People,* 122 Ill. 1. Here, the peremptory challenges were not exhausted, while there they were exhausted, and it was there held that a judgment will not be reversed for errors committed in the trial court in overruling challenges for cause to jurors, even though the defendant has exhausted his peremptory challenges, unless it is further shown that an objectionable juror was forced upon him and sat upon the case, after he had exhausted his peremptory challenges. In our opinion, the *Adler case,* the *Buttolf case* and the *Haslam case,* to the extent that they are in conflict with the views expressed in this opinion, should be overruled.

It is urged that this court should, on this appeal, review the decisions of the circuit and Appellate courts on the question of damages, and on all other questions of fact involved in the controversy. Section 88 of the Practice act, as originally enacted in 1877, made special provision for appeals and writs of error in criminal cases, in cases wherein a franchise or freehold or the validity of a statute is involved, and in chancery cases, and section 89 provided as follows: "The Supreme Court shall re-examine cases brought to it by appeal

or writ of error as to questions of law, only, and no assign-
ment of error shall be allowed which shall call in question the
determination of the inferior or Appellate courts upon contro-
verted questions of fact in any case, excepting those enumer-
ated in the preceding section." The claim is, that said section
89 is in contravention of section 2 of article 6 of the constitu-
tion of 1870, and is an unauthorized attempt on the part of
the General Assembly to deprive this court of a part of its
constitutional jurisdiction. Said section 2 of the constitution
reads thus: "The Supreme Court  *  *  *  shall have
original jurisdiction in cases relating to the revenue, in *man-
damus* and *habeas corpus*, and appellate jurisdiction in all other
cases." It is insisted that this latter clause of the section is
self-executing, and confers appellate jurisdiction "in all other
cases," independently of any legislation.

In *Young* v. *Stearns*, 91 Ill. 221, we said: "There are only
four classes of cases in which there is a constitutional right
of appeal or writ of error to this court. These four classes
are criminal cases, and cases in which either a franchise, a
freehold or the validity of a statute is involved." And in
*Fleischman* v. *Walker*, id. 318, speaking of sections 2 and 11
of article 6 of the constitution of 1870, we said: "These two
sections (2 and 11 of article 6) should be construed together,
and when so construed it is plain that appellants in all cases
do not have a constitutional right, either direct or through the
intermediate courts, of appeal to this court. To hold that
they do, would be to attach no meaning whatever to much
that is contained in said section 11." If we were right in
what we thus held in the cases cited, it follows as a corollary
therefrom that section 89 of the Practice act is not obnoxious
to the charge that it is an unconstitutional limitation upon
the jurisdiction of this tribunal. The section 11 of the con-
stitution that is mentioned in *Fleischman* v. *Walker*, and which
we there construed in connection with section 2 of the same
article, for the purpose of ascertaining the intention of the

combined whole of the two sections, declares, that "after the year of our Lord 1874, inferior courts, of uniform organization and jurisdiction, may be created in districts formed for that purpose, to which such appeals and writs of error as the General Assembly may provide may be prosecuted from circuit and other courts, and from which appeals and writs of error shall lie to the Supreme Court in all criminal cases, and cases in which a franchise or freehold or the validity of a statute is involved, and in such other cases as may be provided by law." We think that the fundamental error of appellant is in assuming that by the clause, "and appellate jurisdiction in all other cases," found in section 2, it was intended to invest this court absolutely with jurisdiction in all cases other than those in which original jurisdiction was conferred upon it. Such an interpretation is in violation of the rule that the inclusion of one case is the exclusion of others, and renders wholly inoperative and nugatory the clause, "and in such other cases as may be provided by law," incorporated in section 11, and does not harmonize the two sections, and give a sensible and intelligent effect to all the provisions of each. In our opinion it was not the intention of the constitution to confer upon this court jurisdiction, absolutely, "in all other cases," but its intention was that in all cases other than those in which this court was given original jurisdiction, its jurisdiction, whether derived immediately from the constitution itself or derived from an act of the legislature, and wholly regardless of the fact whether such jurisdiction was in a few or many or all other cases, should be an appellate jurisdiction, only. See *City of Chicago* v. *Vulcan Iron Works,* 2 Bradw. 189.

Since the legislature of the State had plenary power to vest or not to vest, as it deemed advisable, this court with the ultimate jurisdiction to review cases of the class to which this case belongs, no good reason is perceived why it had not full authority to provide in section 87 of the Practice act that the judgments of the Appellate Courts in such cases shall be final

and conclusive as to all matters of fact in controversy, and in section 89 that this court shall re-examine such cases as to questions of law, only. The legislature might, if it had seen fit so to do, have conferred upon this court, in cases of the class of this, jurisdiction to review the judgments of the Appellate Courts, both upon questions of law and questions of fact, or have made the decisions of the Appellate Courts in such cases final, both as to law and as to fact; and it seems from these considerations to logically follow that the legislature had authority to make the decisions of the Appellate Courts final merely as to questions of fact, and to confer upon the Supreme Court jurisdiction to review upon questions of law, only. Indeed, at common law, errors could be assigned upon matters of law only, and the refusal of a trial court to grant a new trial on the ground that the verdict was against the weight of the evidence was not a matter for which a writ of error would lie, and it is only by virtue of statutes in that behalf that either this or the Appellate Courts re-examine judgments at law on questions of fact.

We have uniformly held, and in so many cases that a citation of them is wholly unnecessary, that in civil cases at law, within the jurisdiction of the Appellate Courts, the judgments of such courts are final and conclusive as to all matters of fact in controversy, and that we are precluded by law from reviewing them in respect to such matters. We have also frequently held that the amount of damages sustained is a question of fact, not open to re-examination in this court. But the particular claim now made, that section 89 of the Practice act is unconstitutional, has apparently not heretofore been urged in or passed upon by this court, and we have therefore felt warranted in giving it some considerable degree of consideration, notwithstanding the numerous rulings of the court based upon the assumption that said section was a valid statute. The result is that we find no substantial ground for

holding that the section is in conflict with section 2 of article 6 of the constitution, and therefore void.

The declaration upon which the case was tried contains three counts, in substance as follows: The first alleges that on the 18th of August, 1886, the defendant ran an excursion train between Petersburg and Ashland, and plaintiff became a passenger thereon, and on the return journey defendant negligently permitted the train to become overcrowded, and by reason thereof the plaintiff, while exercising due care, was by the pressure of the persons on the platform and steps of the car unavoidably crowded off and thereby injured. The second count substantially states the same condition of the train and car, and alleges that by reason thereof plaintiff was unable to stand on the platform, and unavoidably fell off, and was thrown against a heavy truck, etc. The third avers the defendant had notice that an unusual number of persons would take the train, and advertised it would carry all persons at reduced rates; that plaintiff became a passenger; that defendant failed to provide adequate room for the passengers, and suffered the train to be overcrowded, and also carelessly permitted a heavy truck to be on the depot platform at Petersburg, directly in the way of persons who might alight from the train, and that by reason of the overloaded condition of the train, the plaintiff, while exercising due care, was thrown from the car and was dragged against the said truck, whereby he was injured.

There was a soldiers' reunion on August 18, 1886, at Ashland, on the line of appellant's road. The railroad company sold excursion tickets, at reduced rates. The occasion was largely advertised both by the committee of arrangements and the company. Appellee was a resident of Petersburg, the second station north of Ashland, and purchased a return trip excursion ticket. To return the passengers in the evening the regular train going north was used. One extra coach was provided for this train, so that when it left Ashland it

consisted of three passenger coaches, a dining car and a sleeper. The crowd of people returning to Petersburg and other points north was so great that large numbers of them were compelled to stand up in the aisles and upon the platforms of the cars,—in fact, the aisles and platforms of most if not all the cars, except the sleeper and dining car, were completely filled. Appellee occupied a position upon the steps of the forward end of the smoking car, and just as the train reached the south end of the depot platform at Petersburg he was either forced from the train by reason of its crowded condition or voluntarily stepped from it, and coming in contact with a baggage truck, on which a heavy sample trunk was placed, was seriously injured. The jury and two former juries have found that he was involuntarily forced from the train, and that finding has been affirmed by the Appellate Court, and it must therefore be regarded as a settled fact of the case.

Objections are urged to a number of the instructions given for appellee. The first of said instructions we do not regard as obnoxious to the criticism that it relieved appellee of the additional care placed upon all who take extra-hazardous positions, and relieved him of the duty of exercising a care proportioned to the apparent danger of the situation. It merely stated, in general terms, the duty of ordinary care and prudence on the part of a passenger, and that he was not required by law to exercise extraordinary or the highest degree of care; and it was immediately followed, by way of a supplement, by the second instruction, in which the jury were told that by ordinary care the law means such a degree of care, under the circumstances and in the situation in which the plaintiff was placed, as an ordinarily prudent man would exercise under like circumstances and in the same situation. The third instruction was as follows:

"If the jury believe, from the evidence, that the plaintiff, while in the exercise of ordinary care, was injured by or in

consequence of the negligence of the defendant, as charged in the declaration or either one of the counts thereof, then you should find the defendant guilty."

The instruction does not assume that appellant was guilty of negligence, for the qualifying words, "if the jury believe, from the evidence," apply to the entire sentence. It is claimed that the instruction requires of the plaintiff the exercise of ordinary care at the particular point of time when the injury was received, only, and omits the requirement of care previous thereto, and thereby excludes from consideration previous acts of negligence materially contributing to the injury. The word "while" means "during the time that," and seems to necessarily imply some degree of continuance. The jury could not reasonably have regarded it otherwise than as referring to the whole series of circumstances involved in the entire transaction. We have on several occasions interpreted the phrase "at the time," found in an instruction, as having relation to the entire transaction under examination. (*Lake Shore and Michigan Southern Railway Co.* v. *Johnsen,* 135 Ill. 641; *McNulta* v. *Lockridge,* 137 id. 270.) The plaintiff was crowded off or unavoidably fell off of the car while he was standing on its platform or steps. If his being in that place was not, under the circumstances, the exercise of ordinary care, then he was not injured "while in the exercise of ordinary care," as required by the instruction as a condition precedent to a right of recovery, and so the instruction is broad enough to include the supposed contributory negligence that it is claimed is excluded by it. But if there be any defect in the instruction in this regard, it is most amply cured by the ninth instruction for appellee, and in instructions 5, 9, 12, 19, 20, 21, 23, 24, 26, 27, 28, 29 and 30 given for appellant.

Instruction No. 6 told the jury that they were the sole judges of the credibility of the witnesses, and of the weight to be given to the evidence of each and all of them. It is objected that it is not true, either in law or in fact, that they

are such sole judges. There is no doubt but that, under the practice that obtains in this State, both the trial court and a court with appellate jurisdiction are invested with authority to set aside verdicts of juries on the ground that they are against the weight of the evidence; but it is nevertheless true that for all the purposes of a jury trial the jury is the sole judge of the credibility of witnesses and of the weight of evidence. It is suggested that the tendency of such an instruction is to invite recklessness on the part of jurors in the discharge of their duties; but it seems to us that this is hardly to be presumed, and that its tendency, rather, is to impress jurors with a sense of responsibility.

Instruction No. 8 was as follows:

"That the preponderance of evidence may not depend entirely upon the number of witnesses testifying on either side of the case."

It is urged that this is practically telling the jury that the greater number of witnesses is no better than the less number. We do not so understand it. It impliedly concedes that where all other things are equal, the greater number must control. The words "may" and "entirely" are both qualifying words.

The objections urged to instructions Nos. 9 and 10 seem to be without either force or merit.

The trial court modified twelve or fifteen of the instructions asked by appellant before giving them to the jury. Complaint is made of its action in this regard. The instructions, as asked, directed the jury, if they should find, from the evidence, certain specified hypothetical facts to be true, then to find the issues for the defendant. The court so modified these instructions as to require the jury, before they could find for the defendant, not only to find the stated facts, but also to find that such facts, under the circumstances of the case, was negligence or a want of the exercise of ordinary care. The question of negligence is ordinarily a question of fact, to be tried by the jury. It is only when the inference of negli-

gence necessarily results from the statement of facts that the court can properly instruct the jury that such facts establish negligence as a matter of law. *Chicago and Eastern Illinois Railroad Co.* v. *O'Connor*, 119 Ill. 586; *Chicago City Railway Co.* v. *Robinson*, 127 id. 9; *Terre Haute and Indianapolis Railroad Co.* v. *Voelker*, 129 id. 540; *Chicago and Iowa Railroad Co.* v. *Lane*, 130 id. 116. Standing or sitting upon the platform or steps of a railway car when the train is in motion, although it may be *prima facie* evidence of negligence, is not, under all circumstances, negligence *per se* and as a matter of law. See *Colegrove* v. *Railroad Co.* 20 N. Y. 492; *Nolan* v. *Railroad Co.* 87 id. 63; *Willis* v. *L. I. Railroad Co.* 34 id. 670; *Werle* v. *Railroad Co.* 98 id. 650; *Clark* v. *Eighth Avenue Railroad Co.* 36 id. 135; *Treat* v. *B. and L. Railroad Co.* 131 Mass. 371. In Hutchinson on Carriers, sec. 652, it is stated that whether such conduct on the part of a passenger would be such want of due and reasonable care as would exonorate the company from liability in case of an accident resulting in his injury, would depend upon all the circumstances, and would be the proper subject of inquiry by the jury. Like doctrine is announced in 2 Rorer on Railroads, pp. 1101, 1102.

We know from common sense and ordinary observation and experience that under some circumstances it is culpable negligence to stand or sit on the platform or steps of a moving car and that under other circumstances it is not, and unless the case be one where the implication of negligence necessarily arises, it follows that what in a given set of circumstances would be negligence and what would be an exercise of ordinary care are conclusions of fact, to be deduced from the circumstances of the particular case. It would seem that a jury of twelve men of ordinary judgment and experience is peculiarly well qualified to determine whether, under a state of circumstances detailed before them by witnesses, a particular line of conduct was ordinary care,—in other words, such

care as an ordinarily prudent and cautious man would exercise under like circumstances.

Our attention is called to the case of *Chicago, Rock Island and Pacific Railway Co.* v. *Eininger*, 114 Ill. 79, and it is insisted that it is an authority which decisively settles that the modifications here made in the instructions were erroneous. There the defendant asked this instruction: "The jury are instructed, as a matter of law, that if, from the evidence, they believe that the injury to the plaintiff was caused by his attempting to climb upon the train in question while the same was in motion, then he is not entitled to recover, and your verdict should be for the defendants." The trial court modified it by inserting after the word "motion" the clause, "and that he was injured in consequence of his own negligence." This court held that such modification was error. We do not regard that case as in point here. The decision was put upon the express ground that the defendant owed no duty not to run its trains at a greater rate of speed than six miles an hour to a mere trespasser, who was attempting to climb upon its train in violation of a law of the State, which imposed a fine or imprisonment for so doing. In that case, then, there was no liability of the company, regardless of the question of the negligence or care of the person injured. Here, on the contrary, the company did owe a duty to appellee, and if it failed in such duty it is liable, unless negligence is imputable to appellee. And so, also, the case of *Quinn, Admx.* v. *Illinois Central Railroad Co.* 51 Ill. 495, is plainly distinguishable from this, for there the conceded facts were that there was abundant room in the cars, and the deceased voluntarily, and without any necessity therefor, placed himself upon the platform of a car, while here, as conclusively settled by the decisions of the courts below, the facts were quite otherwise. We think that the action of the circuit court in modifying the instructions was not reversible error.

It is urged that it was error to refuse to take the case away from the jury, by instructing them that under the law and the evidence their verdict should be for the defendant. The contention is, that certain conceded facts occurring at Ashland, and certain conceded and undisputed facts occurring at Tallula, necessarily show that the plaintiff was, on two several occasions, guilty of negligence contributing materially to the injury, and that to this extent the question of his negligence was one of law.

In respect to his taking the train at Ashland, on his return trip, plaintiff testified in chief, in substance, as follows : "I walked over and got on to one of the steps of the coach, in the front or north end of the coach. There had been a number of people who stationed themselves on the opposite side of the track from the depot and began to climb on from the opposite side, and there was quite a jam there, and it halted me. Probably I was on the second or third step,—possibly had one foot on the platform,—but at any rate I halted there and looked back over my shoulder and saw a number of lady acquaintances from this place, and I saw by their expression that they were worried, fearing they were not going to get on, and I thought I would step off and give them the preference, and I did so. I did not get inside the coach, and have no recollection of seeing the inside of it at all. I got off and stood there a moment, and they kept piling on, and I thought it looked a little less crowded up at the other coach, and I walked a car length ahead and got up on the steps of that car. Up to that time I didn't even see standing room in a coach for me to occupy. Very soon after I got on those steps I crowded myself and looked forward into the car, — just about the time the train had started or a minute afterwards,— and the people were crowded in that car just as close as it was possible, I think, for people to stand, right up to the door. A moment—very soon—after I got on the steps the train started. I was among the last persons that got on—don't remember

any person passing by me." On cross-examination he said: "I first got upon the front end of a different coach from that which I finally went upon. I got on to possibly the edge of the platform with one foot. I don't know whether, if I had seen fit, I could have gone into it or not. There were people behind and before me, and I think I could have crowded in as well as crowding off. That which prevented my going in was that I was crowded by the people and halted by them. Quite a number of people were coming from the opposite side. My best recollection is that I had one foot on the platform and the other one on the steps. I do not know whether the car was crowded or not, as I have no recollection of looking into it. I presume there were more people behind me than before me. I got off the steps to let the ladies get on. So far as the platform and steps of that car were concerned, and the one I went to, there wasn't much difference."

We do not understand this testimony of the plaintiff to concede that there was even standing room inside the first car at the time that he left it, or that if he had not left it he would have been able to get inside, or that the ladies in whose behalf he retreated got places inside of the car. Other evidence shows that quite a number of ladies were compelled to ride all the way to Petersburg on the platforms of cars. Appellee got off the steps to let the ladies get on, and all that he gave them was his position on the steps, with possibly one foot on the platform, and he got equally as safe a position on the second car as that which he surrendered on the first. It may be probable that if he had retained his position he might have secured a place inside of the car, but to say he would have done so would be a conclusion of fact for the jury to draw or not to draw, in view of all the evidence. It is not a necessary implication from this testimony that appellee voluntarily and with culpable negligence abandoned a safe place on the train and placed himself in an unsafe one. He did not owe a duty to the railroad company to push and crowd his way in order

to get an advantage over other passengers in securing a place within the car, and it does not follow as a matter of law that he was guilty of negligence for not so doing. Nor did his duty to the company require that he should wholly disregard the usual and ordinary courtesies and amenities of life. In fact, we do not understand that it is necessarily, and as matter of law, negligence to stand aside and allow ladies to occupy the safest and most desirable positions in a public conveyance.

It is claimed that the conceded and undisputed facts of what transpired at Tallula convict appellee of contributory negligence that, as a matter of law, preclude a recovery. Tallula is a station, and the only one, between Ashland and Petersburg. The facts relied on are, that at that place a number of excursionists—from seventy-five to one hundred—left the train, and that according to his own statements appellee made no effort, either at or after leaving that place, to enter any other car. In view of the fact that after the train left Ashland the door of the sleeper was opened and a number of passengers, including some twenty-five of the Tallula excursionists, permitted to enter it; of the fact that some twenty witnesses testify to the crowded condition of the cars, in respect to aisles and platforms as well as seats, both after and before the train left Tallula, many of them stating that there was no perceptible change in that regard after leaving Tallula; of the fact that the conductor received from appellee his ticket for railroad fare, making no objection and giving no warning on account of the place he was occupying, and that appellee had no notice from the conductor or any employe on the train, or other person, that he might find room in some other car; of the fact that the train stopped at Tallula but a very short space of time; of the difficulty and danger, if not impossibility, from the crowded condition of the train, of reaching the rear cars, and of the uncertainty of finding any place inside any of the cars if reached, we are of opinion that negligence could not be imputed to appellee as a matter of law,

and that the trial court did not err in submitting to the jury, as a question of fact, whether or not appellee, in retaining his position on the platform and steps of the car where he was, under the circumstances in which he was placed, was in the exercise of ordinary care.

Appellant's theory of the case was fully and fairly presented to the jury in some thirty instructions. There are some technical inaccuracies in a few of the instructions that were given; but we find no just and substantial ground in any of them for reversing the judgment. It may, however, perhaps not be improper for us to say that we would be much better satisfied with the judgment if the damages had been assessed at a very considerably less amount than they were, and that it is likely that if it was a matter which the law gave us a right to control we would be inclined to hold the damages are excessive; but as we have frequently heretofore held, we have no lawful authority to review the decisions of the lower courts in that behalf.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*