## Kristine Petersen, Administratrix, Appellee, v. Elgin, Aurora & Southern Traction Company, Appellant.

### Gen. No. 13,939.

1. PASSENGER AND CARRIER—*when relation established.* Payment of fare is not essential to the establishment of the relation of passenger and carrier if no refusal to pay has taken place and there is no evidence impugning the *bona fides* of the intention of one who has boarded a car.

2. PASSENGER AND CARRIER—*what not obligation of former to avoid injury.* "A passenger in a railway train does not owe a duty to the company to push and crowd his way in order to get an advantage over other passengers in securing a place within the cars, and it does not follow as a matter of law that he will be guilty of neligence in not so doing. Nor will his duty to the company require that he shall wholly disregard the usual and ordinary courtesies and amenities of life. In fact, it is not necessary and as a matter of law negligence to stand aside and allow ladies to occupy the safest and most desirable positions in a public conveyance." Quoted with approval from C. &. A. R. R. Co. v. Fisher, 141 Ill. 614.

3. PASSENGER AND CARRIER—*extent of duty of latter to furnish safe place to ride.* It is the duty of those in charge of a traction car, which is crowded to overflowing, to know of the presence of a passenger upon the step of such car, and knowing that such place is fraught with peculiar danger, to furnish him with a safe place to ride or to warn him to retire from his perilous position, and a liability results from an injury which arises either by reason of such passenger being pushed from such car by virtue of its overcrowded condition or by being struck by a passing car while in such position.

4. EVIDENCE—*when complaint cannot be made of permitting rule to be shown by parol.* Error cannot be predicated either upon the fact of the proof of the existence of a rule or upon the proof of such rule by parol, where such rule was so proven without ob-

jection upon the cross-examination of the complaining party's own witness.

5. ORDINARY CARE—*how question of, to be determined.* Whether a passenger was in the exercise of due and ordinary care for his own safety at the time of his injury is a question for the jury to determine from the evidence.

6. INSTRUCTIONS—*when question of existence of relation of passenger and carrier not ignored.* *Held,* that the question of the existence of the relation of passenger and carrier is not ignored in the following instruction.

"The court instructs the jury that if they find from the evidence that the plaintiff has made out her case by a preponderance of the evidence, as alleged in the first, third, fourth and sixth counts of the declaration, or in either of said first, third, fourth or sixth counts, then the jury should find the defendant guilty."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. ALBERT H. FROST, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed July 6, 1908.

Statement by the Court. This is an action on the case against appellant for negligently causing the death of appellee's intestate, and is brought pursuant to the statute for the benefit of the next of kin of the deceased.

The declaration filed consisted of nine counts, but went to the jury on the first, third, fourth and sixth counts, the other counts having been withdrawn from the consideration of the jury on the motion of appellant.

The negligence charged in the first count, after averring that the deceased was a passenger and that it was the duty of appellant to furnish him with a safe place upon which he could ride upon its cars, is, that appellant wholly neglected its duty in that behalf, but provided, kept and had an unsafe and dangerous place for deceased to ride upon said car, viz: the step of said car, at the front end of said car, on the left-hand side of the front vestibule of said car, which was in close proximity to other cars of appellant passing in an opposite direction upon its tracks, which place was dangerous and unsafe, and a menace

36    APPELLATE COURTS OF ILLINOIS.

Petersen v. Elgin, Aurora & Southern Trac. Co., 142 App. 34.

to the life and limbs of deceased, so that while he was then and there, with all due care and diligence, riding as a passenger upon said car, upon the said step of said car, and having no notice, knowledge or information of the dangers of so riding, deceased, while exercising due care and diligence for his personal safety, was then and there struck by one of appellant's cars then and there passing in the opposite direction upon its tracks, and was caught, squeezed, rolled and crushed by and between said cars, at the intersection of Downer place and River street, in the city of Aurora, and killed.

The third count charges negligence in appellant in that the place where deceased was riding was dangerous and unsafe and a menace to the life and limbs of deceased; that appellant knew and had notice of such dangers, and that deceased had no such knowledge, but was ignorant of the dangers attendant upon riding in that place; that appellant's duty was to have warned deceased of such dangers, but it did not.

The fourth count charges *inter alia* that deceased was a passenger riding on the front end of the car on the step at the left-hand side of the vestibule, said car at the time being propelled over and along the tracks of appellant at the intersection of Downer place and River street in Aurora; and that appellant was then running over and along its adjoining tracks another one of its cars, in an opposite direction, which while so passing the car upon which deceased was riding, was in close proximity to said latter car and within four inches from it; that it was a menace to the life and limbs of deceased and other passengers similarly situate for said cars to pass each other upon the tracks of appellant at the place last mentioned; that it became the duty of appellant to stop the car upon which deceased was riding and to keep said cars from passing each other while deceased was so riding upon its car as aforesaid; alleges a breach of such duty

and the resulting knocking of deceased from his position on the step of the car, killing him.

The sixth count, after averring that deceased became a passenger on appellant's car at Aurora, bound for St. Charles, alleges that it became the duty of appellant to carry deceased safely from Aurora to St. Charles upon its car, but that appellant did not use due and proper care and diligence to do so, but through its servants and employes conducted itself so carelessly, negligently and unskillfully in that behalf that by and through its neglect, etc., the said car upon which deceased was riding, in the exercise of all due care and diligence for his own safety, was caused and permitted to come in contact and close proximity with another car of appellant then and there being propelled at a high rate of speed in the opposite direction over and along an adjoining track of appellant; that by reason thereof deceased was struck and rolled off said car and so injured that he subsequently died, etc.

Three of these four counts also contain an averment that deceased left him surviving a widow and three minor children.

Appellant pleaded not guilty, and a trial before the court and jury resulted in a verdict and judgment for ten thousand dollars, in an attempt to reverse which this appeal is prosecuted.

The evidence is not in serious conflict. The defenses interposed rest mainly for their support upon the application of the law to the facts in proof. Deceased was a moulder living with his family in Chicago. The date of the accident was September 7, 1903. It was a holiday known as "Labor Day," when the mechanic, the artisan and laborer cease from their toil. Deceased and his friend, the witness Eric Nelson, started from Chicago for a journey to Aurora and St. Charles and back again to Chicago. They chose as the route of their travel the Interurban electric roads running to those cities. Aurora was reached in due sea-

38    APPELLATE COURTS OF ILLINOIS.

Petersen v. Elgin, Aurora & Southern Trac. Co., 142 App. 34.

son, a little time prior to nine o'clock in the morning, and the road of appellant running from Aurora to St. Charles was selected by the two men as the means of travel to the latter place. The cars of appellant were at that time much in demand by travelers, so that in addition to the usual schedule extra cars were provided to run between the two cities named. The deceased and Nelson boarded the car, upon which the former met his death, at Broadway and Fox street, Aurora. There were more passengers than the car could accommodate, and the rush and crowding for a place ensued familiar to all patrons of electric cars. The deceased and Nelson seem to have lost the opportunity to procure places on the inside of the car by waiting and permitting men accompanied by women to get inside of the car ahead of them. The car was a large closed car with spacious vestibules at each end, with folding doors on each side of the vestibules, which were reached by a step below the platform of the vestibules. Passengers crowded into the car from both sides of the vestibules. The deceased and Nelson, just before the car started, being unable to get into the car, stood upon the front step of the car on the left-hand side. The doors of the vestibule were open. On this side of the car as it was running from Aurora on its journey toward St. Charles, there were car tracks upon which were run the cars of appellant entering the terminus of the road at Aurora. After the car upon the step of which deceased and Nelson were standing had progressed some little distance on its way, a car on the adjoining track was met and passed in safety. At the juncture of Downer place and River street a car of the appellant, passing the car on the step of which the deceased and Nelson were riding, struck the deceased and knocked him off, squeezing him and crushing him between cars so badly that he soon afterwards died.

The tracks at the point of the accident are so close together as to make the step of the car an unsafe

place on which to stand and ride. The car on which the deceased was riding did not stop from the time it started from Aurora until after the accident happened, and then in consequence thereof. It is in evidence that neither the motorman nor conductor of the car saw deceased or Nelson or knew of their presence upon the car step until after the accident. No fare had been collected from passengers up to the time of the accident, and this for the reason that it was not the custom of conductors to collect fares until after passing Downer place. The car was so crowded that after it started the deceased and Nelson were not able to get off the step into the car. After the car started Nelson remarked to the deceased that their position was one fraught with danger, but deceased made no reply. Neither deceased nor Nelson had been in Aurora before. Neither the conductor nor motorman gave any warning to the deceased or Nelson of their perilous position, or said anything to them. Nelson was also struck upon the shoulder by the passing car, but managed to keep his hold and save himself from falling from the car.

The custom of appellant was to keep the vestibule doors closed on the side nearest the tracks on which cars ran in an opposite direction.

Error is predicated and argued by appellant for the failure of the trial judge to direct a verdict at the close of appellee's proofs and again at the close of all the proofs, in the admission of oral proof of appellant's rule requiring vestibule doors next to the south track to be closed, in the giving of certain instructions at the request of appellee, in refusing to direct the jury to find appellant not guilty as to counts 1, 3, 4 and 6, that deceased was guilty of neligence which contributed to cause the accident, and, finally, that the verdict is contrary to the weight of the evidence.

HOPKINS, PEFFERS & HOPKINS, for appellant.

HENRY N. MILLER and LEE MIGHELL, for appellee.

Mr. Presiding Justice Holdom delivered the opinion of the court.

The liability of appellant in this case is predicated upon its negligence in failing to furnish appellee's intestate a place on its car where he could ride in safety. The law imposed the duty on appellant to use the utmost diligence consistent with the practical operation of its road to carry its passengers safely and to do all necessary things and provide all appliances essential to that end. This is its duty to its passengers. The primary inquiry is, therefore, was appellee's intestate a passenger? That he had not paid his fare is admitted. That he had not been asked for his fare is conceded. That the point where, by the custom of the conductors, collection of fares is commenced had not been reached prior to the time when deceased was knocked from the car is gathered from the testimony of appellant's conductor in charge of its car. That the deceased was not ready and willing to pay his fare upon request, there is not the slightest suspicion arising from the proof. There is nothing in the proof impugning the *bona fides* of the deceased's intention to become a passenger on appellant's car when he boarded it, or showing that he intended to avoid payment of the fare, according to the company's schedule of charges. It was not essential to the creation of the contract of carrier and passenger that deceased should have paid his fare. It is common knowledge that fares are not collected of passengers immediately upon their boarding a street car, and if it was not so, the proof of appellant establishes the fact that the point of collecting fares had not been reached according to the custom of appellant's conductors at the time of the accident, and that no demand for a fare had been made. The proof affirmatively establishes that deceased was by implication of law a passenger on the car of appellant at the time he received his mortal injuries. North Chicago Street Ry. Co. v. Williams, 140 Ill. 275.

The authorities cited by appellant's counsel in cases where the injured party was attempting to steal a ride or indulging in what is commonly known as "flipping" cars, have no application to the case at bar.

The four vestibule doors of the car were open, inviting people to enter the car through them and become passengers. The proof shows that deceased was a stranger in Aurora, never having been there before, and was, we must assume from this fact, unacquainted with the construction of the tracks of appellant's road and with the lurking dangers to be confronted, if any there were. Neither was he chargeable with notice of appellant's regulations in relation to the management of its traffic, but had a right to act upon conditions as he saw them and enter the car through the doors which the servants of appellant had left open, impliedly for such purposes. The day of the accident was one given over to a holiday by working people, many of whom observed the day by traveling to one place and another upon electric and other cars. Appellant had recognized that there would be an increased demand for its passenger cars and provided additional cars to meet it, and the evidence shows that the car in question was filled to overflowing. True it is that deceased might have reached a place of safety within the car by crowding, and not have been left to risk his life upon the step; and we think the observations in C. & A. R. R. Co. v. Fisher, 141 Ill. 614, peculiarly pertinent to the condition of deceased, where the court says: "A passenger in a railway train does not owe a duty to the company to push and crowd his way in order to get an advantage over other passengers in securing a place within the cars, and it does not follow as a matter of law that he will be guilty of negligence in not so doing. Nor will his duty to the company require that he shall wholly disregard the usual and ordinary courtesies and amenities of life. In fact, it is not necessary and as a matter of law

negligence to stand aside and allow ladies to occupy the safest and most desirable positions in a public conveyance." But it is urged that the servants of the company did not know of the presence of the deceased upon the step of its car, and that consequently he was not accepted as a passenger, and that he voluntarily assumed the risk of so dangerous a riding place. We say that it was the duty of the servants of the company to have known of the deceased's presence upon the step of the car, and knowing that the place was fraught with danger, to have furnished him a safe place or warned him to retire from his perilous one. It stands to reason that in the physical condition of the parallel tracks of appellant, it was chargeable with knowledge of the dangers attendant upon the passing of cars going in opposite directions to persons on the step of the vestibules of such cars on the side of the car next to the passing car. Regardless of whether the company had a rule or not so providing, its servants should have closed the vestibule doors on the side nearest the tracks on which cars were run in an opposite direction, and have seen to it that no passengers were riding upon the step of the car, before starting on the trip, and if any persons were found upon such steps, to either provide a place for them upon the inside of the car, or, not being able so to do, to warn them off and refuse to suffer them to ride in such a position of danger. Failure so to do is negligence, for, as said in Booth on Street Railways, sec. 355, "If the company permits its cars to become so crowded that passengers are compelled to ride on the footboards, and attempts to run them in that condition by other cars which cannot be passed without a collision and injury to passengers, it is guilty of culpable negligence, for the result of which the risk assumed by the passengers will constitute no defense."

The law requires a carrier of passengers like appellant "to see and know, before putting a car in motion, that no passenger is in a position which would

be rendered perilous." Miller v. St. Paul City Ry. Co., 66 Minn. 192.

Nelson, after the car started, realized the perilous position he and deceased were in and mentioned it to the deceased, but how the deceased regarded the situation we can never know, for he made no reply. But however perilous the position at that time, deceased was powerless to avoid such perils. The servants of the company were inside the car, which was speeding on its way, and there is nothing in the evidence from which it can be said that any effort of deceased or Nelson, if made, would have resulted in stopping the car before the accident happened.

The four counts under which the cause was submitted to the jury are sufficient to charge appellant as guilty of the negligence shown by the proofs to have been the proximate cause of the injury to appellee's intestate. The learned trial judge therefore did not err in refusing to instruct the jury to find a verdict for appellant at any of the three times he was moved to do so by counsel for appellant. A careful examination of all the evidence found in this record satisfies us that the verdict of the jury was warranted from such proofs, and that the manifest weight of the evidence supports the verdict.

We think that it is immaterial whether appellant had any rule requiring the vestibule doors of cars on double tracks in Aurora, nearest adjoining car tracks, to be closed or not; or, if it had, that it was error to prove it by the oral statement of Roy Green, its assistant superintendent. In the first place, it was negligence, regardless of there being any rule upon the subject, to run the car without closing the vestibule door next to the track on which cars were run in an opposite direction. But if there was anything in the objection, appellant waived it when it permitted the existence of the rule to be proven on cross-examination of its own witness, Raynor Denton, the conductor of the car, without objection.

44 APPELLATE COURTS OF ILLINOIS.

Petersen v. Elgin, Aurora & Southern Trac. Co., 142 App. 34.

While the evidence may be in such a condition as to leave it in doubt whether the deceased was knocked off the step by the passing car or pushed against the passing car by the act of some other passenger, induced by the overcrowded condition of the car, still whichever cause operated to bring about the accident, they are equally imputable to the negligence of appellant charged in the declaration; for, as said in Booth on Street Railways, *supra,* "Nor will the wrongful act of passengers, who throw another to the ground and injure him while rushing past to leave the car with reckless haste, relieve the company from the consequences of overcrowding its car and failing to control its passengers."

Whether the deceased was in the exercise of due and ordinary care for his own safety at the time he was injured, was a question for the jury to determine from the evidence; for, as said in C. & A. R. R. Co. v. Fisher, *supra,* "We know from common sense and ordinary observation and experience that under some circumstances it is culpable negligence to stand or sit upon the platform or steps of a moving car, and that under other circumstances it is not, and unless the case be one where the implication of negligence necessarily arises, it follows that what in a given set of circumstances would be negligence, and what would be the exercise of ordinary care, are conclusions of fact to be deduced from the circumstances of the particular case. It would seem that a jury of twelve men of ordinary judgment and experience is particularly well equipped to determine whether under a set of circumstances detailed before them by witnesses, a particular line of conduct was ordinary care—in other words, such care as an ordinarily prudent and cautious man would exercise under the circumstances."

It was the province of the jury to determine from the surroundings of the deceased at the time he boarded the car, his lack of knowledge of the dangers to be encountered from his position on the step of the

car, and the action of appellant in impliedly inviting him to take passage on the car and to ride upon its step, whether he was at the time of the accident in the exercise of due care for his own safety. Under the proofs in the record, we are unable to say that the finding of the jury on this element of the case is so manifestly contrary to the probative force of the evidence as to call for our interference.

Complaint is made of certain instructions given by the court to the jury at the instance of appellee. We have critically examined all of the instructions given to the jury, and are of the opinion that they were sufficiently instructed on the law applicable to every theory upon which the case was tried. All the instructions requested by appellant were given, and they are numerous and comprehensive, and submit to the jury the law applicable to the proofs of appellant on every phase of its defense.

The following instruction is said to be erroneous, because it ignored the question of whether or not deceased was a passenger:

"The court instructs the jury that if they find from the evidence that the plaintiff has made out her case by a preponderance of the evidence, as alleged in the first, third, fourth and sixth counts of the declaration, or in either of said first, third, fourth or sixth counts, then the jury should find the defendant guilty."

From the reading of the instructions it is clear that the contention of appellee was that her intestate was a passenger at the time of the accident, and the jury were plainly told a person becomes in law a passenger by implication arising from his acts and that of the carrier; so that the jury squarely had the question of whether or not the deceased was a passenger before them. The instruction referred to the counts of the declaration under which the cause was submitted to the jury, and was so worded as to relate back not only to the questions of due care of deceased and negligence of appellant, but to the averment that

deceased was a passenger. Traction Co. v. Lowen-rosen, 222 Ill. 506.

A similar instruction has been frequently approved by the Supreme Court. By a number of instructions prepared by appellant the question of deceased being a passenger was submitted to the jury, and in one instruction they were told that if they believed deceased was a trespasser and not a passenger, they should find in favor of appellant. If the deceased was not a passenger, he was a trespasser, and appellant owed him no duty except not to wilfully injure him. Had deceased been a trespasser, he would have assumed the risk of any accident happening to him while such trespasser. The instructions must be regarded as a whole and so read. Following this rule, we find the jury were informed upon every point and theory about which appellant now complains.

We think the trial was a fair one; that no material right or interest of appellant was curtailed or injuriously affected by any rulings of the trial court on the questions before him, and that there is in this record no error calling for a disturbance of the judgment of the Circuit Court, and it is therefore affirmed.

*Affirmed.*