THE ELGIN, JOLIET AND EASTERN RAILWAY COMPANY

*v.*

MICHAEL LAWLOR.

*Opinion filed October 23, 1907.*

1. NEGLIGENCE—*failure to look and listen at railroad crossing is
not negligence per se.* Failure of a person driving upon a highway
to look and listen when approaching a railroad crossing is not, of
itself, and under all circumstances, negligence as a matter of law,
since there may be circumstances excusing such failure.

2. TRIAL—*what remark by court is not improper.* Where a wit-
ness for the defendant in a personal injury case has made a state-
ment in which he has confused the order of events, a remark by
the court, after asking the witness if he was certain about it, that
it did not seem credible, is harmless, where the witness, upon re-
flection, found he was mistaken and corrected his statement.

3. SAME—*the proper method of proving statements made out of
court.* Where the attention of a witness for the plaintiff in a per-
sonal injury case is called to a conversation with a third person
after the accident, and he is asked by the defendant if he did not
make certain statements to such person, the defendant may call
such third person as a witness and ask him if the other witness
made such statements to him, but it is not proper to ask him to re-
peat what the latter said to him.

4. EVIDENCE—*when all testimony of a physician should not be
stricken out.* Where a physician has testified that the injuries to
the plaintiff in a personal injury case are permanent and are liable
to lead to tuberculosis, but it appears, on cross-examination, that
his opinion is based, in part, upon his knowledge of the fact that
brothers and sisters of the plaintiff had died of tuberculosis, it is

proper to strike out the testimony as to the injury being liable to lead to tuberculosis, but the testimony as to permanency of the injuries is properly allowed to stand.

5. RAILROADS—*persons in charge of train must use reasonable care in approaching a road crossing.* Persons handling trains approaching highway crossings are required to use reasonable care, aside from the statutory requirements; but what is such degree of care is a question of fact, depending upon local conditions, one of which is the extent to which the crossing is used.

6. SAME—*when instruction as to duty of railroad company at crossings should be refused.* An instruction stating that "railway trains approaching a public crossing in a thickly settled district are required to use a higher degree of care than they are required to observe in approaching public highways in a sparsely settled district" should be refused as being abstract in form, and as authorizing the jury to compare the defendant's duties at the particular crossing with its duties at some other crossing.

7. INSTRUCTIONS—*when omission of element of number of witnesses from instruction concerning preponderance is not fatal.* The element of the number of witnesses testifying should be considered by the jury, with other elements, in determining the preponderance of the evidence, but an instruction which does not tell the jury to disregard the element of numbers but which merely omits that element from the others recited in the instruction, after stating that the preponderance is not to be determined by the number of witnesses alone, is not ground for reversal in a case where the element of numbers is not important or where the omission is supplied by other instructions. (*Meyer* v. *Mead,* 83 Ill. 19, *Chicago and Alton Railroad Co.* v. *Fisher,* 141 id. 614, and *West Chicago Street Railroad Co.* v. *Lieserowitz,* 197 id. 607, explained.)

8. SAME—*enumeration of things the law does not require is of doubtful propriety.* The fact that an instruction for the plaintiff in a personal injury case correctly stating the law as to the degree of care required by him is prefaced by the statement that the law did not require him to exercise an extraordinary degree of care is not ground for reversal, although the practice of stating in an instruction what the law does not require is of doubtful propriety.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding.

J. L. O'Donnell, and T. F. Donovan, (Knapp, Haynie & Campbell, of counsel,) for appellant:

It is incumbent upon the plaintiff suing for damages that are alleged to have been caused by the negligence of the railroad company, to prove such negligence by a preponderance of the evidence. *Railroad Co.* v. *Case,* 56 Ill. App. 478; *Railroad Co.* v. *Nichols,* 74 id. 198.

A person injured by cars at a railroad crossing must, by reliable evidence, show that in approaching the crossing he was using ordinary care and caution for his own safety. *Railroad Co.* v. *Barnett,* 56 Ill. App. 384; *Cullen* v. *Higgins,* 216 Ill. 78.

A person has no right to blindly run into danger and then seek to recover damages for the result from another, and a person will not ordinarily be permitted to recover from a railroad company for injuries received at a crossing where the view of the railroad tracks was unobstructed for a considerable distance. *Railroad Co.* v. *Thorsen,* 68 Ill. App. 288.

Where an approaching train is in full sight of the person attempting to cross the track, and he apparently looks but does not see the train, it will be presumed that he did not look. *Railway Co.* v. *DeFreitas,* 109 Ill. App. 104; *Railroad Co.* v. *Cudahy,* 119 id. 328.

The testimony of witnesses to that which is a physical impossibility must be rejected as not in accordance with the truth of the matter, even if not contradicted by the direct testimony of another witness. *Railroad Co.* v. *Cudahy,* 119 Ill. App. 328.

If a person looks he is supposed to look for the purpose of seeing, and if an object is in plain sight and he apparently looks but does not see it, it is manifest that he does not do what he appears to do. The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train, when the view was unobstructed, or where

if he had properly exercised his sight he must have seen it. *Railway Co.* v. *DeFreitas,* 109 Ill. App. 106; *Railroad Co.* v. *Kirby,* 86 id. 57; *Artz* v. *Railroad Co.* 34 Iowa, 153; 2 Thompson on Negligence, par. 1655.

It is the duty of every person about to cross a railroad track to approach cautiously and endeavor to ascertain if there is personal danger in crossing. All persons are bound to know that such an undertaking is dangerous and that they must take the proper precaution to avoid accidents in so doing, otherwise they cannot recover for injuries received thereby. *Railroad Co.* v. *Monehan,* 94 Ill. App. 82.

The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified to at the trial, and if, on having his attention called, on cross-examination, to such previous statements and the time and place and occasion on which they were made, he either denies or does not admit having made them, such previous statements may be proved by way of impeachment. 1 Greenleaf on Evidence, sec. 462, and notes; *Railroad Co.* v. *Feehan,* 149 Ill. 215; *Railroad Co.* v. *Wade,* 206 id. 523.

The opinion of a physician based on the party's family history, or based, in whole or in part, on the self-serving statement of a party made with a view of enabling such physician to become a witness in his behalf in a suit for injuries, is not admissible in evidence. *Railroad Co.* v. *Carr,* 170 Ill. 478; *Railway Co.* v. *Donworth,* 203 id. 192; *Machine Co.* v. *Crowley,* 115 Ill. App. 540.

Where a case is close in its facts the instructions should all state the law accurately. The jury, not being judges of the law, are as likely to follow a bad instruction as a good one. *Martin* v. *O'Connor,* 85 Ill. App. 275; *Railroad Co.* v. *Gilbert,* 157 Ill. 354.

It is not proper for the court to make remarks in the presence of the jury calculated to influence their findings. *Lycan* v. *People,* 107 Ill. 428; *Railroad Co.* v. *Souders,* 178 id. 585.

Barr, Barr & Barr, for appellee:

Aside from any statutory regulation, it is the duty of a railroad company, in operating its trains, to use ordinary care and prudence to avoid injuring persons or property at public crossings, and compliance with every statutory regulation will not be deemed sufficient to relieve a company from liability if prudence would dictate the exercise of other and additional precautions. *Railroad Co.* v. *Halbert,* 179 Ill. 196; *Railroad Co.* v. *Perkins,* 125 id. 127.

In cases of this kind the question as to whether a person was guilty of contributory negligence is generally one of fact for the jury, and only becomes a question of law when the evidence so clearly fails to establish due care that all reasonable minds would reach the conclusion that there was such contributory negligence. *Railway Co.* v. *Steckman,* 224 Ill. 501.

If the evidence on the question is in conflict, or if there is evidence fairly tending to support the verdict, or if reasonable minds might arrive at different conclusions, it is a question of fact and must be submitted to the jury, (*Werk* v. *Steel Co.* 154 Ill. 527,) and its verdict, and the judgment of the trial court affirmed by the Appellate Court, are final and conclusive. *Railroad Co.* v. *Crose,* 214 Ill. 602.

The second instruction is a correct statement of the law. *Overtoom* v. *Railway Co.* 181 Ill. 323; *Railroad Co.* v. *Barrett,* 117 Ill. App. 322; *Boyd* v. *Railroad Co.* 103 id. 199.

The third instruction is not subject to the criticism as invading the province of the jury. Practically the same language has been used and approved by both the Appellate Court and the Supreme Court. *Railway Co.* v. *Lieserowitz,* 197 Ill. 607; 99 Ill. App. 591.

Where there is an irreconcilable conflict in the testimony the upper court will not reverse the judgment of the trial court, where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict. *Calvert* v. *Carpenter,* 96 Ill. 63.

Mr. Justice Cartwright delivered the opinion of the court:

The Elgin, Joliet and Eastern railroad crosses a public highway known as East Cass street, in the town of Joliet, near the city limits of the city of Joliet. The highway runs somewhat north of east and the railroad slightly west of north, so that they intersect at right angles. At or soon after six o'clock in the evening of September 22, 1904, the appellee, Michael Lawlor, was driving east on said highway with a horse and old open buggy, and a man named Frank Hurley was with him. There were three tracks at that place, and as appellee came toward the crossing an engine of the Michigan Central Railroad Company was pushing a train of fifteen box-cars of that road from the south on the east track, to deliver them at the yards of the appellant north of the crossing. The train crew were employees of the Michigan Central Railroad Company, and two of them were standing on the north end of the first car approaching the crossing. The west rail of the west track was about forty feet west of the middle of the east track, and after coming to the west track there was no obstruction to the view of the approaching train. The appellee drove across the west track and middle track, and as he came upon the east track the buggy was struck by the train. Appellee was thrown out and sustained a number of bruises and the buggy was shattered. This suit was brought by him in the circuit court of Will county to recover damages for his injuries, and he charged appellant with negligence of the train crew in handling and driving the engine and cars and with neglect to ring a bell or blow a whistle, as required by the statute. Appellant's plea was the general issue, and upon a trial there was a verdict finding appellant guilty and assessing appellee's damages at $1650. The Appellate Court for the Second District affirmed the judgment.

It is first contended that the circuit court erred in refusing to direct a verdict of not guilty at the request of the

defendant. The question presented by that request was one of law, and we are of the opinion that the court did not err in refusing to declare, as a matter of law, that there was no evidence fairly tending to prove a neglect of the statutory duty charged in the declaration or that the evidence proved plaintiff guilty of negligence as a conclusion of law. There was evidence for the defendant that plaintiff was intoxicated; that he was whipping his horse a block and a half from the crossing; that he dropped his whip in the road and went upon the crossing at a run or gallop or very fast trot; that he did not look either way or notice the approaching train, and that after the accident he made a statement showing that he could not hold the horse. This evidence was contradicted by testimony for the plaintiff that he had not drank enough to affect him; that he drove upon the crossing at a moderate gait; that the day was cloudy and it was getting dusk; that plaintiff heard engines up north and looked toward the north; that it did not occur to him that a train might be coming from the south, but that he looked in that direction also. There was also evidence tending to prove that no statutory signal was given, although the fact was disputed. Hurley said that he did not look for trains or pay any attention to them but looked on his own side, which was the north.

It is insisted that it would have been physically impossible for the plaintiff to look toward the approaching train and not see it. Whether that is so or not depends to some extent upon the degree of light at the time. In any event, a failure to look and listen cannot be said to be negligence as a matter of law, since there may be circumstances excusing such failure; (*Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 Ill. 132; *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 id. 623;) and it is not denied that there may have been engines north of the crossing which attracted plaintiff's attention.

Much complaint is made of the conduct and remarks of the trial court in the presence of the jury. The attention of the witness Frank Hurley, testifying for the plaintiff, had been called to a conversation with Seneca Hammond, and he was asked if he did not say to Hammond, "We saw the train coming up the track and heard the train whistle but couldn't stop the horse in time," and also that the plaintiff whipped the horse before he got on the track and that was why he could not stop him. Hammond being called as a witness for defendant testified that he asked Hurley how it happened, and Hurley said they were driving so fast they could not stop. He was then asked what, if anything, Hurley said to him. On objection to the question the court said: "No, I don't think we can go into that; and another question is whether it should go in as a part of the *res gestæ*." The court was right in sustaining the objection, for the reason that defendant had no right to call for the conversation by asking what Hurley said to the witness. The only right of the defendant was to ask Hammond whether the statements repeated to Hurley were made, and the question would have been answered by yes or no; but the reason given by the court was not a good one and what was said about the *res gestæ* was improper. After the ruling, however, the question was repeated and answered, the witness stating everything that Hurley said, and defendant had no cause of complaint. After the witness had given the conversation counsel for the defendant asked this question: "Give the conversation between you and Mr. Hurley," and the court said, "He has." There was no occasion to repeat the conversation, and no exception was taken to what the court said which is now complained of. Hammond made a statement in which he got the order of events confused, and the court asked him if he was certain about it, and stated that it did not seem credible. It is not proper for a court to say anything to affect the credibility of a witness with the jury, but the court intended nothing of the kind in this

case, and the effect was not to discredit the witness, who, upon reflection, found that he was mistaken and corrected his statement. A doctor called by the plaintiff testified that the injuries of plaintiff were permanent and that they were liable to lead to tuberculosis. On cross-examination it appeared that the opinion of the doctor was based, in part at least, upon his knowledge of the fact that brothers and sisters of the plaintiff had died from tuberculosis, and counsel for defendant thereupon moved to strike out all the testimony of the doctor that the injuries were permanent and that plaintiff would have tuberculosis. The court overruled the objection because it was too broad and included testimony that was proper, but the court then ruled out all the testimony of the witness concerning tuberculosis. There are some other objections to the conduct and remarks of the court which are of so little importance as not to require particular mention. There was nothing in either that was prejudicial to the defendant.

It is urged that the second, third, fourth, fifth and sixth instructions given at the request of the plaintiff were erroneous and that the court erred in giving them. The second instruction was as follows:

"You are instructed that railway trains approaching a public crossing in a thickly settled district are required to use a higher degree of care than they are required to observe in approaching public highways in a sparsely settled district."

Aside from the requirements of the statute, persons handling trains approaching crossings are required to use reasonable care, and what is such degree of care is a question of fact, depending upon the local conditions. One of the numerous conditions which would be material for the consideration of the jury would be the extent to which the crossing is used. The question whether a crossing is much used by the public is proper to be considered, and in the case of *Overtoom* v. *Chicago and Eastern Illinois Railroad*

*Co.* 181 Ill. 323, which is cited in support of the instruction, the fact was regarded as material. In that case the trial court refused to allow the plaintiff to prove that the crossing was in a thickly settled and populous part of Chicago and that the street was constantly traveled over by large numbers of people. Even if the instruction had contained a proposition of law, it was abstract in form, and it was not the province of the jury to compare the duties of the defendant at this crossing with its duties at some other crossing. It did not undertake to inform the jury what precautions should be taken at either kind of crossing or what the defendant ought to have done, and while the court ought to have refused it, we do not see how it could have harmed the defendant.

The third instruction was as follows:

"The jury are instructed that the preponderance of evidence in a case is not, necessarily, alone determined by the number of witnesses testifying to a particular fact or state of facts. In determining upon which side the preponderance of evidence is, the jury should take into consideration the opportunities of the several witnesses for seeing or knowing the things about which they testify; their conduct and demeanor while testifying; their interest or lack of interest, if any, in the result of the suit; the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved in the trial, and from all the evidence, facts and circumstances in evidence determine on which side is the weight or preponderance of the evidence."

The objection to the instruction is, that it told the jury what they were to consider in determining on which side the preponderance lay but wholly omitted the number of witnesses, which is one of the things the jury were bound to consider. The element of numbers should be considered by them with all the other things which are mentioned in the instruction. (*Gage* v. *Eddy,* 179 Ill. 492; *Chicago Un-*

*ion Traction Co.* v. *Hampe,* 228 id. 346.) The instruction did not tell the jury to disregard numbers, but it omitted to enumerate that element among other things to be taken into account. In defense of the instruction it is said that this court has approved the same instruction in other cases. In the case of *Meyer* v. *Mead,* 83 Ill. 19, an instruction was given stating that the preponderance of the evidence in a case is not alone determined by the number of witnesses testifying to any fact or facts, but in determining where the preponderance is the jury must also take into consideration the opportunities or occasion of the witnesses seeing, knowing or remembering what they testified to or about, and other things mentioned in the instruction. The objection was that the jury were told they need only consider the number of witnesses and also other matters pertaining to the witnesses, whereas the facts and circumstances in the case must be considered as well as the number and credibility of the witnesses. That instruction advised the jury to consider the number of the witnesses and also the other things contained in it. The question here involved was not considered and could not have been. In *Chicago and Alton Railroad Co.* v. *Fisher,* 141 Ill. 614, the instruction was as follows: "That the preponderance of evidence may not depend entirely upon the number of witnesses testifying on either side of the case." It was urged that the instruction practically told the jury that the greater number of witnesses is no better than the lesser number, but the court said that the instruction impliedly conceded that where other things were equal the greater number must control. In that case there was no recital of things to be considered and an omission of the important element of numbers. In *West Chicago Street Railroad Co.* v. *Lieserowitz,* 197 Ill. 607, an instruction which was in substance the same as the one given in this case was objected to as telling the jury to disregard numbers in determining upon the preponderance of the evidence. It was said that the correctness of the in-

struction was sustained by the two cases just referred to, which, perhaps, was only correct in a limited sense; but it was said that if the instruction was defective it was cured by instruction No. 18 given for the appellant in that case, which told the jury that the number of credible and disinterested witnesses testifying on the one side or the other of a disputed point is a proper element for the jury to consider in determining where lies the preponderance of the evidence. The two instructions taken together correctly stated the law. We do not think it can be said that this court has given its unqualified approval to this instruction, or that it might not be misleading in a case where the question of numbers was important and no other instruction was given supplementing it. In this case we would not feel justified in reversing the judgment on account of it.

The fourth instruction correctly stated the law as to the degree of care required of the plaintiff, but it was prefaced by the statement that the law did not require of him the exercise of an extraordinary degree of care. The plaintiff was entitled to an instruction informing the jury of the degree of care required of him by the law, and the proper office of an instruction was completely filled by the latter part of the instruction in question. Generally, an enumeration of things which the law does not require, and which is in the nature of argument, is at least of doubtful propriety. It is true, however, that the law did not require of the plaintiff the exercise of an extraordinay degree of care, and the statement is not ground for reversing the judgment.

The fifth and sixth instructions are objected to as assuming facts, or telling the jury, by inference, that certain facts existed. They were accurate statements of the law, and we find in them no assumption of any matter of fact.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*