John Andreicyk, Appellee, v. Chicago & Eastern Illinois Railroad Company, Appellant.

Gen. No. 5,204.

INSTRUCTIONS—*when upon preponderance of evidence erroneous.* An instruction which details the various elements which the jury may consider in determining upon which side the preponderance of the evidence lies, is erroneous if it omits a reference to the number of witnesses testifying upon a side, such element being important in the case and not supplied by any other given instruction.

Action in case for personal injuries. Appeal from the Circuit Court of Kankakee county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1909. Reversed and remanded. Opinion filed October 19, 1909.

W. R. HUNTER, for appellant; HOMER T. DICK, of counsel.

E. P. HARNEY, N. L. PIOTROWSKI and COOPER & HOBBIE, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellant's double track railroad runs north and south from a point south of Woodland junction to Chicago through Momence where it crosses the Kankakee river. North of the river it crosses the C. & I. S. R. R. at right angles. Its round-house, coal sheds, freight yards and shops are situated on the south side of the river and its depot on the north side. Between appellant's tracks, about six hundred feet north of the depot at a point where a "Y" connects the C. & I. S. R. R. with the tracks of appellant is a signal about three feet high called a "dwarf" or "pot" signal. On November 17, 1907, appellee was found injured lying from ten to twelve feet north of this signal, and this suit was brought to recover damages for such injuries. The declaration contained three counts. The first alleged that appellee was lawfully on appellant's train

by invitation, and that its servants maliciously threw him with great force off said train under the wheels, and thereby one of his feet was cut off and the other mangled. The second count alleged that while appellee was riding on appellant's train, its employes, acting within the scope of their authority, wilfully and wantonly beat appellee and threw him off said train. The third count alleged that appellant's servants wantonly and wilfully caused appellee to be thrown off said train. A plea of not guilty was interposed, and a trial had, resulting in a verdict for appellee for $10,500. A motion for a new trial was denied, judgment was entered on the verdict and the company appealed.

Appellee's account of the accident and the account of it given by appellant's witnesses vary greatly, and on all vital points, one is flatly contradictory of the other.

Appellee testified that he was twenty years old, and could not speak or understand much English; that he came from Russian Poland in June, 1907, to Detroit, Michigan; that he left Detroit, November 12, 1907, and went to Charlestown, West Virginia, where he stayed two days; that from there he went to Cincinnati, and left there Friday morning on a freight train for Chicago; that by riding on freight trains and walking he reached Momence about noon, Sunday, November 17, where he stopped at a coal shed; that a freight train came and he walked alongside it; that somebody on the engine made a motion with his hand for him to get on the rear; that there were two persons in the window of the engine and after he had boarded the train there were three; that he got on an open coal car next the engine while the train was standing still, and in about three or four minutes it started, and a man came from the engine and asked him in English where he was going and he told him Chicago; that the man told him to give him money and he said he had none; that another man came from the rear and they searched his pockets and took a razor; that another

man came from the engine and struck him lightly on the head with a shovel twice and told him to get off; that he stepped on a board where they coupled cars; that a man was standing on the same board and another was sitting in the corner of the car; that one took hold of his right hand and started to pull him and the other got him by the waist and they threw him off; that he was taken to the doctor's, and when he woke he had only one leg and the other was wrapped up.  A witness for appellee testified that he was on the "Y" going towards the depot when he heard a cry and looked under the train and saw this boy between the north and south bound tracks; that when the train had passed he went over where he was; that he lay about twelve feet north of the pot signal; that the train was within ten or fifteen feet of the witness when it·passed; that when it got up a way, eight or ten cars, he saw two or three men next the engine; that to the best of his remembrance the next car to the tank was a coal car.

The fireman testified that he first saw appellee at Coaler where he climbed into the cab of the engine and offered to break coal to get a ride; that appellee climbed back over the tank and the next time he saw him was at Momence; that they picked up five or six cars south of the river there, and the head brakeman climbed into the engine cab and rode there through the city; that after they were across the river, he saw appellee outside the track and just as the engine got opposite him the head brakeman motioned appellee to get on; that he started to do so and grabbed the second or third box car behind the engine, and just as he got hold of it, a dwarf or pot signal struck him; that neither the witness nor the head brakemen left the cab from the time the brakeman got in until after the accident.  The conductor testified that he first saw appellee at Woodland junction, which was some thirty miles south of Momence; that appellee jumped off and he next saw him at Coaler; that he went up where

appellee was and told him to get off and stay off, and
that appellee went away; that between St. Anne and
Momence he found appellee in a car of coal next the
engine and told him to get off at the next stop and go
away, and that appellee promised he would; that when
they got to Momence, they picked up five box cars and
three coal cars which were coupled on with the box
cars next the engine, and that there he saw appellee
in the yards; that the first notice he had of trouble
was after they had started he heard some one scream
and saw appellee lying on the ground; that he did not
throw appellee off the train and did not see any one
else do it; that the brakeman called his attention to
the pot signal and that it was bent over; that the
engineer, fireman, rear and head brakeman and him-
self were the only members of the train crew. The
rear brakeman testified that he first saw appellee at
Woodland junction; that the conductor put him off a
mile south of Coaler; that they stopped at Coaler;
that the witness went back to flag the rear and appel-
lee passed him going towards the train; that when
they were near St. Anne, he saw appellee and the head-
brakeman sitting in a coal car next the engine talking;
that just south of the river he saw a young fellow grab
a car and get on ahead of a box car; that the first
thing he saw of the accident he heard appellee cry out
and saw him between the tracks; that when he got off
he saw the signal was broken. A baggageman testi-
fied that at seven o'clock that morning the signal was
all right. The engineer testified that he first saw ap-
pellee at Coaler in the cab of the engine; that appel-
lee wanted to break coal for his passage to Chicago;
that he told appellee he must get off and that he
climbed over the tank; that he saw appellee again at
Papineau in the first car with the head brakeman;
that from the time the train left the yard on the south
side of the river at Momence until he stopped north
of the "Three I" railroad, he did not go out of his
cab, and during all that time his fireman and the head

brakeman were with him. The head brakeman was not a witness. There was evidence that three boys got on the train as it passed the depot south of the point of the accident, and that after the train stopped they left the train.

As the judgment must be reversed for an error of law, we refrain from expressing any opinion on the merits of the case, except to suggest that the preponderance of the proof seems to favor appellant's theory of the case.

At the request of appellee the court gave the jury an instruction which detailed the various elements which they were to consider in determining upon which side was the preponderance of the evidence. It omitted the number of witnesses testifying concerning the controverted facts as one of the elements to be considered in determining which version of the facts were established by the preponderance of the evidence. In this respect it was like the instruction upon that subject discussed in Elgin, Joliet & Eastern Ry. Co. v. Lawlor, 229 Ill. 621. The number of witnesses was one of the elements to be considered. Gage v. Eddy, 179 Ill. 492; Chicago Union Traction v. Hampe, 228 Ill. 346. In this case the number of witnesses was a very important element for appellant. In the Lawlor case, the court said respecting an instruction that omitted the number of witnesses, "We do not think it can be said that this court has given its unqualified approval to this instruction, or that it might not be misleading in a case where the question of numbers was important and no other instruction was given supplementing it." In Chicago Union Traction Company v. Hampe, *supra,* the court, in passing on an instruction which omitted any reference to the number of witnesses testifying pro and con and concluded "and from all these circumstances determine upon which side is the weight or preponderance of the evidence," said, "This instruction directed the jury to determine the matter of the preponderance from the elements

mentioned in the instruction. It omitted one very important consideration and for that reason should have been refused.''

In the case at bar the element omitted was not embodied in any other instruction, and, as the record shows that appellee's testimony in support of the averment in the declaration that he was thrown from the train by appellant's employes, is not corroborated by the testimony of any witness, and by scarcely any facts or circumstances in evidence, and that it was contradicted by the testimony of the engineer, fireman, conductor and rear brakeman, the element of the number of witnesses testifying pro and con upon that subject was of great and perhaps controlling importance to appellant, and its omission from this instruction was serious and reversible error.

For that error, the judgment is reversed and the cause remanded.

*Reversed and remanded.*