# Ella Rynearson, Appellee, v. William McCartney and Jennie McCartney, Appellants.

## Gen. No. 6,309.

1. WITNESSES, § 253*—*when party entitled to benefit of greater number in his behalf.* A party to an action is entitled to whatever benefit the jury might consider arose from the greater number of witnesses on his behalf on a material question.

2. APPEAL AND ERROR, § 1535*—*when instruction on preponderance of evidence is not reversibly erroneous.* An instruction is not reversibly erroneous in so far as it states that a preponderance of the evidence does not necessarily mean a greater number of witnesses who testify on any issue involved where such instruction is read in connection with other instructions which inform the jury they should consider all of the evidence.

3. INSTRUCTIONS, § 81*—*when erroneous in singling out particular testimony.* An instruction *held* erroneous in singling out particular .testimony, in an action to recover damages for personal injuries.

4. INSTRUCTIONS, § 18*—*when misleading.* An instruction may properly enumerate the elements to be considered by the jury, but is liable to be misleading in telling them they "must" or "should" consider certain elements.

5. MASTER AND SERVANT, § 191*—*what is duty of master to inform servant as to danger in employment.* The duty of a master to inform his servant as to the danger in the servant's employment depends upon the apparent understanding of the servant.

6. INSTRUCTIONS, § 7*—*when accuracy essential.* Great accuracy in instructions is required where the preponderance of the evidence is a close question.

7. INSTRUCTIONS, § 87*—*when instruction on preponderance of evidence is erroneous.* An instruction on the preponderance of evidence as affected by greater number of witnesses, *held* erroneous where it contained the limiting word "necessarily" in one place, but omitted it in another and the testimony was conflicting.

Appeal from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the April term, 1916. Reversed and remanded. Opinion filed October 12, 1916.

CAMERON & CAMERON, for appellants.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

WEIL & BARTLEY, for appellee; CLARENCE D. MURPHY, of counsel.

MR. JUSTICE CARNES delivered the opinion of the court.

This is an appeal by the defendants from a judgment of $2,500 rendered on a jury trial in an action on the case for a personal injury to the plaintiff caused by an explosion of gasoline vapor in a room in which she was employed by them doing their family ironing with a gasoline laundry iron. Her claim is based on an alleged failure of the defendants to warn her of such danger in the use of gasoline, of which danger she says she was ignorant. It is defended on the ground that she represented herself to understand the nature of gasoline and how to fill and operate the iron, and that she was, notwithstanding, advised as to the proper method of filling the iron, and the accident happened because of her violation of her instruction.

It appears that appellee was at the time (June 30, 1914) about forty-eight years old; that in addition to her own housework she was sometimes engaged by the day in washing and house cleaning for others; that she had periodically been so employed by appellants, who were farmers, for about two months before the accident; that she had before done their ironing with the gasoline iron that she was using on this occasion; that it was filled by bringing gasoline in a small pitcher from a tank in the yard near by; that at the time of the accident she, out of the presence of Mrs. McCartney, brought into the room a pitcher of gasoline and filled the receptacle on the iron, then, while lighting a match to start the flame there was an explosion of gas from which she was seriously injured. Her claim, supported by her individual testimony, is that Mrs. McCartney asked her if she could fill the iron and start it; and she replied that she guessed she could; that she

had never received any instructions as to the operation of the iron or how it was to be filled, and had never been warned of the dangers incident to lighting it, and did not know that gasoline gave off explosive gases, but that she had before seen Mrs. McCartney fill the iron and prepare it for use. She said she took the pitcher to the tank in the yard and partially filled it, then took it into the laundry room and poured the gasoline from the pitcher into the tank, leaving none in the pitcher, and when she struck the match the explosion and flames came so quick that she could not tell where they started. Appellants' claim, supported by Mrs. McCartney's testimony, is that appellee herself suggested that she would go and iron, and said to Mrs. McCartney: "You don't need to go out there with me, because I have fixed the iron and can do it again to-day"; that before that time she, Mrs. McCartney, had filled the iron and started it for her and expressly warned her of the danger of leaving any gasoline in the room in the pitcher from which she filled the iron; that generally the amount brought in was not all used in filling the iron, and appellee was expressly told to carry the pitcher back in the yard and empty the remaining contents into the tank before lighting the iron; that on this occasion there was gasoline remaining in the pitcher and the explosion came from that source, and therefore the injury was caused by violation of an express order and warning. Mrs. McCartney also testified that before that time appellee had told her she was familiar with the use of gasoline and had used it at other places where she had worked.

No one other than Mrs. McCartney and appellee testified as to these conversations between them. Their testimony was in direct conflict. If the jury believed appellee she was entitled to a verdict on the ground of failure of the duty of the master to warn his servant of a danger known to him and not to the

servant. If Mrs. McCartney is to be believed, there was no liability. It was quite material whether the flame started from gasoline left in the pitcher. Mrs. McCartney testified that there was a dark ring on the inside of the pitcher immediately after the accident that might indicate the fire had burned there. The physician called to attend appellee testified that she, appellee, told him that the accident occurred in that way, and that it was entirely-her fault. Several other witnesses testified for appellants that within a few hours of the accident appellee stated that there was nobody to blame but herself, or something to that effect. These witnesses also said that at the time appellee made these statements she was apparently clear in her mind and knew what she was saying. Appellee does not deny making such statements, but says she was so distressed and under the influence of medicine given her that she has no recollection of what she said to these parties. If appellee, in the possession of her mental faculties, made statements that the accident was all her own fault, such statements tend strongly to contradict her testimony and corroborate that of Mrs. McCartney. Appellants were entitled to whatever benefit the jury might consider arose from the greater number of witnesses on a material question.

The court, at the instance of appellee, instructed the jury:

"You are instructed that while the plaintiff must prove her case by a preponderance of the evidence, that does not necessarily mean a greater number of witnesses who testify on any issue or issues involved in the case; the preponderance of evidence does not depend upon the number of witnesses, and does not mean the greater number of witnesses, but it depends upon the weight of evidence, and means the greater weight of evidence; and if the plaintiff in this case has so proven her case as explained herein and in the instruction of the court and as alleged in the declaration

or some count thereof, you should find the defendant guilty.''

And also:

''That even though you may believe from the evidence that the plaintiff, at different times after the accident in question, made statements to the effect that her injuries were caused through her own fault still, you are further instructed that in determining the weight to be given to such evidence, you have a right to and should take into consideration the fact, if proven by the evidence, as to whether or not the plaintiff at the time she made such statements, knew that she was making them, together with all the other facts and circumstances in evidence before you.''

Appellants urge these instructions as reversible error. It would seem on the authority of *St. Louis & O'Fallon Ry. Co. v. Union Trust & Savings Bank,* 209 Ill. 457, 460; *Chenoweth v. Burr,* 242 Ill. 312, 319; *Lyons v. Ryerson & Son,* 242 Ill. 409, 417; *Chicago Union Traction Co. v. Hampe,* 228 Ill. 346; *Elgin, J. & E. Ry. Co. v. Lawlor,* 229 Ill. 621; *Chicago & A. R. Co. v. Fisher,* 141 Ill. 614, 626; *North Chicago St. R. Co. v. Fitzgibbons,* 180 Ill. 466, 468; and *Gough v. Illinois Cent. Traction Co.,* 180 Ill. App. 708, that the instruction, in so far as it states that a preponderance of the evidence does not necessarily mean a greater number of witnesses who testify on any issue or issues involved in the case should not be held reversible error, and perhaps is permissible in cases where it is read in connection with other instructions that inform the jury they should consider all the evidence. But its propriety, even when the word ''necessarily'' or some equivalent limiting word is used, has been several times questioned. There is no doubt that the number of witnesses is not to be ignored by the jury, although it is not necessarily controlling; neither are any of the other elements that are often stated to the jury in instructions as to what they may consider in determining the weight of the evidence necessarily controlling. There

is an obvious danger in selecting any one of several elements and telling the jury it does not necessarily control, notwithstanding that statement is true. And where such instructions have been discussed and held not error in some of the above-cited cases, it has been apparently for the reason that the limiting word "necessarily" or some equivalent word was used. In the present case, while that limiting word appears in the first part of the instruction, the jury were afterwards informed that the preponderance of evidence does not "depend upon the number of witnesses and does not mean the greater number of witnesses," thus partially destroying the force of the word "necessarily" that had been before used in the instruction. We think in the condition of the evidence the instruction in that form should be held substantial error.

The other instruction above quoted seems subject to criticism because in effect it singles out the plaintiff's testimony that she did not know what she was saying when she was making the statements that the injuries were caused through her own fault. It also violates the rule announced on the authority of an earlier case in *Lyons v. Chicago City Ry. Co.*, 258 Ill. 76, 84, that while it may be proper to enumerate elements which the jury may consider, an instruction which tells them they "must" or "should" consider is liable to be misleading.

Appellants complain of instructions on the duty of the master to inform the servant of dangers, and on the question of assumption of risk by the servant; that they direct the attention of the jury to the capacity of appellee, or people of that class, instead of to persons of average intelligence and prudence. These instructions seem to conform to the principles announced in the text of 26 Cyc. 1196, and following pages, supported by numerous authorities, including Illinois cases. The duty to inform a servant must certainly depend upon

the apparent understanding of the servant.  Information in English writing would very likely be sufficient for the ideal, average man or woman, but it would not avail the master in a case where he knew, or ought to have known, that the servant could not read and did not understand the English language.

It is doubtful whether the verdict is not so manifestly against the preponderance of the evidence that a new trial should be granted upon that ground.  If not, it is certainly so. close a question upon the evidence that great accuracy in the instructions was required.

For the reasons above stated the judgment is reversed and the cause remanded for further proceedings.

*Reversed and remanded.*