## In the Matter of the Application for a Conservator for Jo H. Willits Dunning. Jo H. Willits Dunning, Appellant. A. B. Childs, Appellee.

## Gen. No. 6,572.

1. INSTRUCTIONS, § 88*—when instruction on determination of preponderance of evidence is reversibly erroneous. On a petition for the appointment of a conservator for an insane person, an instruction that while the burden of the charge in the case was upon the People to make out their case by a preponderance of the evidence, yet the preponderance of the evidence is not determined by the number of witnesses alone testifying on either side, but in order to determine upon which side the evidence preponderates they must take into consideration all the facts and circumstances in evidence, the manner and appearance of the witnesses while testifying, their interest or lack of interest, if any is shown by the evidence, and all the facts and circumstances in evidence, and from all these and all the other evidence determine upon which side the preponderance lies, was reversibly erroneous because not adequately informing the jury that the number of credible witnesses testifying was a proper element in determining where the preponderance lies, the question of numbers being important.

2. DOMICILE, § 13*—when of wife is that of husband. As long as

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the relations between a wife and her husband are not adverse, his domicile is her domicile.

3. DOMICILE, § 13*—*acquirement of separate by wife.* A wife may abandon her husband and acquire a residence of her own.

4. INSANE PERSONS, § 19*—*when court has jurisdiction of proceedings for appointment of conservator.* Evidence *held* sufficient to show that a wife, while sane, changed her residence from that of her husband in another State and acquired a residence in the State of Illinois so as to give the court of the county in Illinois in which she resided jurisdiction of proceedings for the appointment of a conservator, within the statute (J. & A. ¶ 7285), conferring jurisdiction only on "the County Court of the county wherein such person resides."

5. INSANE PERSONS—*when competent to show condition of mind of person before adjudication of sanity.* On a petition for the appointment of a conservator of an insane person, it is competent to show the condition of mind of the person claimed to be insane before the date of a prior adjudication of sanity, at times when she was admittedly sane and at other times when she was admittedly insane.

6. INSANE PERSONS—*when evidence as to insanity of person on date judicially declared to be sane is admissible.* On a petition for the appointment of a conservator of a person claimed to be insane, it is competent for the person taking the acknowledgment of such alleged insane person to deeds and mortgages executed on the same day that she was previously declared to be sane to testify that she was insane at the time of the taking of such acknowledgments.

7. EVIDENCE, § 367*—*how opinion as to sanity of person may be formed.* An opinion as to any person's sanity may be formed from slight observation of what that person says or does, or fails to say or do, on a given occasion.

8. WITNESSES, § 454*—*when weight of opinions of is for jury.* The weight of the opinions of persons as to the sanity of another, when based upon slight observation, is for the jury.

9. EVIDENCE, § 129*—*necessity of accounting for loss of writings.* It is error to admit proof of writings without sufficiently accounting for their loss.

10. WITNESSES, § 226*—*what is improper cross-examination as to sanity of person.* In proceedings for the appointment of a conservator of a person claimed to be insane, either party has the right to examine a witness as to a given period of the life of the person claimed to be insane without subjecting that witness to cross-examination as to another and different period.

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

In the Matter of Jo H. Willits Dunning, 211 Ill. App. 633.

Appeal from the Circuit Court of Mercer county; the Hon. WIL-
LIAM T. CHURCH, Judge, presiding. Heard in this court ,at the April
term, 1918. Reversed and remanded. Opinion filed July 25, 1918.

ROBERT L. WATSON, HOMER D. DINES and CHARLES J.
SCOFIELD, for appellant.

A. K. HARDY and JOHN M. WILSON, for appellee.

MR. JUSTICE CARNES delivered the opinion of the
court.

Appellant, Jo H. Willits Dunning, is a woman now
70 years old, one of a large family residing at and
near Keithsburg, Mercer county, Illinois. She taught
in the public schools there until she was 50 years of
age, living with unmarried brothers and sisters, and
when through teaching she continued to so live until
she was 64 years old, when in January, 1912, she mar-
ried Milton Dunning and removed with him to Bed-
ford, Iowa. She was discontented there away from
her Keithsburg relatives and friends. A sister with
her family came to live at Bedford. Appellant en-
deavored to aid them financially and was dissatisfied
with the result. Her late venture in married life was
not satisfactory to her, and in the spring of 1915 she
became insane, laboring under hallucinations and de-
lusions. She had considerable property, and her mar-
ried brother, William A. Willits, came there from his
home in Mercer county, Illinois, and was appointed
her conservator by the District Court of Taylor county,
Iowa, in December, 1915. He took her to a sanitarium
at St. Joseph, Missouri, where she remained about a
month, and then brought her back to Mercer county,
Illinois, where, on his petition, he was by the County
Court of that county appointed conservator of her per-
son and property February 12, 1916, and continued to
act as such until March 15, 1917, when, under the pro-
vision of chapter 86, sec. 37 of our statute (J. & A.

¶ 7321), on her application, her conservator was removed and the care and management of her property restored to her. What, if any, further action was taken in the Iowa court does not appear.

After the order of restoration March 15, 1917, and on the same day, appellant made conveyances of a large portion of her property much to the advantage of her brother William and disappointing to the expectations of other relatives. She remained with William for a few days and then went with him to visit Davenport, Iowa, with a view of keeping away from other members of her family. They, in the meantime, had learned of the conveyances and brought suits to cancel them, and on April 3, 1917, less than three weeks after her restoration, her nephew, A. B. Childs, filed the petition in this case in the County Court of Mercer county for the appointment of a conservator, alleging that appellant was distracted or feeble-minded, and therefore incapable of managing her estate, consisting of real and personal property worth about $50,000. A contested jury trial in the County Court resulted in an order appointing a conservator. She appealed from that judgment to the Circuit Court where there was a like result, and this appeal is from that judgment in the Circuit Court.

Both parties in the court below, and here, assume that the issue for the jury was as to the condition of appellant's mind at the time of the hearing. The trial was protracted. There are over 1,200 pages of testimony in the bill of exceptions. Counsel agree that the judgment of March 15, 1917, in the restoration proceedings settles beyond controversy any question as to appellant's mental condition at that time; that she is for the purposes of this record conclusively presumed to have been sane and competent to transact business when that order was entered; therefore the question presented below and here is whether after the entry of that judgment she became distracted or feeble-minded

and incapable of managing and caring for her estate, and was in that condition at the time of the trial in the Circuit Court. A great part of the evidence is descriptive of her condition of mind prior to the judgment of restoration, and at times when she was unquestionably insane. But the petitioner produced several witnesses testifying to facts and circumstances occurring after March 15, 1917, indicating unsoundness of appellant's mind, and these witnesses testified that in their opinion she was not of sound mind at the periods they mentioned after that date, and that she was incompetent to transact ordinary business. Some of them said they could see no material difference in her mental condition after and before that date. Appellant, however, produced a larger number of witnesses that had seen and conversed with her since her restoration and were of the opinion that her mind was normal and she was competent to transact ordinary business. The testimony read from the record impresses us as presenting a fair but close question for a jury to determine under proper instructions. Various facts and circumstances were proven tending to support each contention, but a strong factor supporting appellant's case is her greater number of witnesses. That superiority in number is urged by her counsel here and is entitled to weight and consideration by any tribunal charged with the duty of determining the facts. In this state of the record the court at the instance of appellee gave the jury the following instruction:

"The court instructs the jury that while the burden of the charges in this case are upon the People of the State of Illinois, to make out their case by the preponderance of the evidence, yet you are further instructed that the preponderance of the evidence is not determined by the number of witnesses alone testifying on either side, but in order to determine upon which side the evidence preponderates, you must take into consideration all the facts and circumstances in

evidence; the manner and appearance of the witnesses while testifying; their interest or lack of interest; if any is shown by the evidence and all the facts and circumstances in evidence, and from all these and all the other evidence determine upon which side the preponderance lies.''

It is substantially the same instruction that was held bad in *Elgin, J. & E. Ry. Co. v. Lawlor*, 229 Ill. 621, but not reversible error because another instruction informed the jury that the number of credible and disinterested witnesses testifying was a proper element to consider in determining where the preponderance lies. The court said the instruction might be misleading in a case where the question of numbers was important and no other instruction was given supplementing it. In *Lyons v. Joseph T. Ryerson & Son*, 242 Ill. 409, 417, a similar instruction was condemned, and the court said that in view of the fact that more witnesses testified for appellant than for the other party the instruction might have misled the jury, indicating that the error was one of the grounds for reversing the case. In *DeJoannis v. Domestic Engineering Co.*, 185 Ill. App. 271, a case in which there was a greater number of witnesses testifying for the appellant, a similar instruction given at the instance of appellee was held reversible error. The same conclusion was reached under similar conditions in *Yanloniz v. Spring Valley Coal Co.*, 185 Ill. App. 563. This court in *Andreicyk v. Chicago & E. I. R. Co.*, 150 Ill. App. 539, reversed the judgment for that error alone where it was apparent that the number of witnesses was of great importance to appellant. We also discussed a similar instruction, reviewing several cases and holding it substantial error, in *Rynearson v. McCartney*, 203 Ill. App. 555. There are several cases in our Supreme and Appellate Courts where this instruction has been held not reversible error, but there seems to be no doubt it is error, and whether revers-

ible or not depends upon the condition of the record in other respects. Appellee does not claim that the error was cured by any other instruction given, but calls our attention to several cases in which it was held not alone sufficient to work a reversal. In the present case, as we have before said, the number of witnesses testifying for appellant was an important factor in determining the preponderance of the evidence, and we think it was reversible error to smother that factor by the negative words used in the first part of the instruction and omit it entirely from the affirmative statement of the elements necessary to be considered. It is true that in many cases the error would for one reason or another not be of sufficient importance to require a reversal of the judgment, but it is not consistent to point out again and again, as the courts have, that this instruction is substantial error and then say that it alone can never work a reversal. And if it is to be held reversible error in any case, we see no escape from so considering it here.

It is strongly insisted by appellant that she is a resident of Bedford, Iowa, and therefore the courts of Mercer county had no jurisdiction because section 1 of the Act under which the proceedings were had (J. & A. ¶ 7285) confers jurisdiction only on "the County Court of the county wherein such person resides." Appellee answers that the relations of appellant and her husband were adverse and so continued after her restoration on March 15, 1917, and she therefore had a legal right to choose her own place of residence irrespective of that of her husband. It is true that so long as the relations between herself and her husband were not adverse his domicile was her domicile. (*Cooper v. Beers*, 143 Ill. 25.) This court said in *Evans v. Evans*, 164 Ill. App. 614, as long as the relation of husband and wife exists with no intention on the part of either to break such relations, the residence of the husband is, in the eye of the law, the residence of the wife; but

it is equally true that the wife may abandon her husband and acquire a residence of her own. In discussing the question of residence of a complainant in a divorce proceeding, the court said in *Chapman v. Chapman,* 129 Ill. 386, 389: "While it is true, as a general rule of law, that the residence of the wife is fixed by that of the husband, yet it is not true * * * that a wife living separate and apart from her husband may not establish an independent residence." So far as we know, it is generally assumed without question in this State that a wife abandoning her husband in another State and coming permanently to live in this State acquires a residence here and gives the court in the county in which she resides jurisdiction to entertain her bill for divorce from her nonresident husband. But appellant suggests "that persons under legal disability or restraint are incapable of losing or gaining a residence by acting under the control of others." But her contention is that she was sane on and after March 15, 1917, and it is agreed that for the purposes of this record we must assume that she was sane and competent to transact business on March 15, 1917, when the judgment of restoration was entered. The conveyances before mentioned that she executed on that day were three deeds and one mortgage, in each of which she recited that she was a resident of Keithsburg, Illinois. The record does not disclose what became of her husband after her conservator was appointed in Iowa, and we are of the opinion that there is enough in the evidence, in the absence of any showing to the contrary, to warrant the conclusion that she had while sane changed her residence from Bedford, Iowa, to her old home at Keithsburg, Illinois, and therefore the court had jurisdiction. Appellee also suggests in this connection that residence is not the same as domicile; that for the purposes of this statute she may be deemed a resident of Keithsburg because she was dwelling there and her property was there al-

though her technical domicile might be in Iowa. There is some authority supporting this position. (*Kelsey v. Green*, 69 Conn. 291, 38 L. R. A. 471; 21 Cyc. 25.) But we conclude without discussing or deciding that question that appellant's residence was in Mercer county, for the other reasons above stated.

Appellant also urges that the court erred in permitting testimony describing her condition when she was confessedly insane, and argues that the judgment of restoration of March 15, 1917, should have the effect to exclude all testimony of her mental unsoundness before that date. She says in her brief: "The subject-matter of the inquiry in this case was the mental condition of appellant at the time of trial, and only such evidence as had a bearing upon her mental condition at that time was admissible." Appellee takes the same position. Assuming that to be the point of inquiry, we still think it was competent to show her condition of mind before March 15, 1917, at times when she was admittedly sane and other times when she was admittedly insane. It is familiar law and practice in an inquiry as to the sanity of any person to enter into the whole history of that person's life and of the lives of his ancestors and relatives as tending to show the mental condition of the subject at the particular time in question. It is insisted that the witness who took appellant's acknowledgment of the deeds and mortgage executed on the same day that she was restored to her property should not have been permitted to say she was not then of sound mind. It is not inconceivable that a person declared sane at 10 o'clock in the morning of a given day might become violently and manifestly insane on the afternoon of the same day. We know of no legal reason if the fact existed why it should not be shown.

It is also urged that the court permitted witnesses to express opinions that appellant was not competent to transact ordinary business without stating sufficient

reasons for those opinions. Appellant says nonexpert witnesses cannot give their opinions that a person is not of sound mind unless they state such facts and circumstances as may induce a reasonable belief in the unsoundness of mind of the person under investigation, and it is for the court and not for the jury to determine whether such witness states sufficient facts upon which to predicate such opinion. We do not think that rule was materially violated. An opinion as to any person's sanity may be and often is formed from slight observation of what that person says or does, or fails to say and do, on a given occasion. Witnesses for each party in the present case expressed opinions with more or less foundation of facts on which they were based. We do not see that the court erred in permitting those opinions. Their weight was a question for the jury. There was technical error in permitting proof of writings without sufficient accounting for their loss, but the writings were of little consequence. There is a discussion of alleged errors in permitting evidence as to collateral matters that is excused by appellee on the ground that it was drawn out by appellant. The question will probably not arise in another trial. It is claimed by appellant that a witness called by appellee and examined as to appellant's condition at one period of her life was subject to cross-examination by her as to her condition at another period. We think either party had a right to examine a witness as to a given period of her life without subjecting that witness to cross-examination as to another and different period. The judgment is reversed and the cause remanded to the Circuit Court for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*