## The Chicago, Rock Island & Pacific Railway Company v. J. Byron Turck, Administrator.

### Gen. No. 12,917.

1. INSTRUCTIONS—*when required to be accurate.* Instructions in a close case are required to be close and accurate.

2. INSTRUCTIONS—*how to be considered.* Instructions are to be regarded as one entire series and the omissions of one may be supplied by the contents of another. ,

3. INSTRUCTION—*when inaccurate, not cured by correct.* An inaccurate instruction will not be cured by a correct one where the two are contradictory and the contradiction pertains to a material matter.

4. INSTRUCTION—*when equivalent to direction to render verdict of guilty.* Held, that the following instruction is erroneous as being equivalent to a direction to find a verdict of guilty:

"If you believe from the evidence, or the admissions of the plaintiff in this cause, that a sum of money was paid by the Lake Shore & Michigan Southern Railway Company to the plaintiff in consideration for failure to prosecute claim against it for causing the accident in question, *then you should deduct such sum and render a verdict for only the remainder.*"

BROWN, P. J., dissenting in part.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1906. Reversed and remanded. Opinion filed January 7, 1907.

BENJAMIN S. CABLE, for appellant.

ELMER & COHEN and E. C. WOOD, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

James J. Bamrich, at the time of the occurrences complained of, was a switchman in the employ of the Lake Shore & Michigan Southern Railway Company, tending switches in the vicinity of Forty-fourth street. At the time Bamrich met his death he was working at a switch of the Lake Shore Company between one of its tracks and a track of appellant, Rock Island Company, near Forty-fourth street. It is alleged in the declara-

tion that the arrangement of the switch, being in too close contiguity to the Rock Island track, made its operation fraught with danger to the switchman using such switch; that it was not a reasonably safe place in which to work, but on the contrary, unsafe and dangerous. This switch was maintained by both companies and used by both of them in moving their trains. At this point of the right of way of these railroads the tracks are elevated. The switch was operated by a so-called "arm and ball," and was between tracks four and five, and within three feet of track No. 5.

Bamrich was a night switchman and lost his life ten or twenty minutes before six o'clock in the morning, in the gray of the dawn of March 9, 1904, by being run over by an engine of the Rock Island Company drawing a stock train. It was dangerous to operate that switch while a train was running on track five, the track on which the Rock Island engine and train were proceeding at the time Bamrich was struck. Bamrich at this time was nineteen years of age and had been employed as such switchman in the vicinity of this Forty-fourth street switch two or three months. He was at the time in question engaged in switching a Lake Shore train from track No. 2 to track No. 4, and he was busily engaged in manipulating the switches and giving the necessary signals to yard and train crews in directing and regulating the movements of this train. The Rock Island stock train, it is claimed, came north on track No. 5 without warning of any kind to Bamrich and without the ringing of the bell on the engine to give notice of its approach, and while Bamrich was stooping over to throw back and close the switch over which the rear of the Lake Shore train had passed, the engine of the Rock Island train struck and killed him; that the Rock Island train came in upon the signal of the Rock Island switchman, who was informed of the movements

of the Lake Shore train and had knowledge of the dangerous location of this switch, but who failed to give any notice or warning signal to Bamrich, so that he might have been afforded an opportunity to escape from the impending danger, which was apparent to the Rock Island switchman. The Rock Island train, it is claimed, was proceeding at an excessive rate of speed, considering the dangers obvious at the place of the accident, and at a speed exceeding twenty miles an hour. The ordinance on track elevation in terms repeals all other ordinances relating to speed of trains and the giving of signals within city limits.

The suit was commenced against appellant and the Lake Shore Company, the latter of which before the trial paid appellant $300, stipulating that as to it the suit should be dismissed. Such stipulation neither released the cause of action nor the right to prosecute the Lake Shore Company. The conditions under which the Lake Shore Company was dismissed out of the case are not in dispute.

A trial before the court and jury resulted in a verdict and judgment against appellant for $7,500, to reverse which this appeal is prosecuted and numerous errors assigned upon the record, one of which challenges the correctness of the following instruction given at the request of appellee as modified by the court, viz.:

"If you believe from the evidence, or the admissions of the plaintiff in this cause, that a sum of money was paid by the Lake Shore & Michigan Southern Railway Company to the plaintiff in consideration for failure to prosecute claim against it for causing the accident in question, then you should deduct such sum and render a verdict for only the remainder."

A review of the facts here is rendered unnecessary from the conclusions which we have reached upon an examination of this record. The result of those conclusions makes it necessary to again submit the case to the jury. We therefore express no opinion as to

what the evidence either *pro* or *con* tends to prove or disprove. It is apparent that there is a sharp conflict in the testimony bearing upon the liability of appellant, making it highly important that the jury be correctly instructed as to the principles of law to be applied to the facts when found and the rules of law governing the jury in their ascertainment of such facts. As said in Holloway v. Johnson, 129 Ill. 367, "Where the evidence is conflicting and contradictory and the case is one which may on the facts be decided either way, it is of great importance that the instructions of the court should be accurate, so that the jury may not be misled, but be left free to arrive at a correct conclusion from the evidence."

These observations are particularly pertinent to this case.

It is well settled law that the instructions of the court must be taken as a whole; that the law applicable to different questions may be stated in separate instructions, and that the law applicable to all questions involved need not be stated in each instruction given. The instructions supplement each other, and where the law is fairly stated when viewed as a series, they then fulfil all legal requirements. But where an instruction in effect directs a verdict, or, by the ordinary interpretation of the language used it is susceptible of being understood by an ordinarily intelligent person as assuming the finding of a verdict by the jury for one of the parties, such an instruction must be regarded as directing a verdict. Partridge v. Cutler, 168 Ill. 504.

In Montgomery v. Barringer, 218 Ill. 327, an instruction which impliedly directed a verdict was held to be such error as to work a reversal of the judgment.

It is undoubtedly the law in this jurisdiction that ordinarily an erroneous instruction will be cured by other instructions in the series which correctly state the legal principle so erroneously stated. But where

it is clearly evident that the jury might be misled by the erroneous statement in such instruction of an important legal principle in a close case, where, as in the case at bar, there is a sharp conflict in the evidence, such error will result in the reversal of the judgment. It is true, as contended, that the legal principle erroneously stated in the sixth instruction is correctly set forth in instruction nine; but that does not cure the defect in instruction six or the probable effect on the jury of its misleading statement. Ill. Central R. R. Co. v. Behrens, 101 Ill. App. 33; Cleveland, C., C. & St. L. Ry. v. Best, 169 Ill. 301; C. & A. Ry. v. Keegan, 185 Ill. 70.

We cannot lose sight of the fact, disclosed by an examination of this sixth instruction, that it was peculiarly susceptible of misleading the jury. It has all the earmarks of the presiding judge's special attention and consideration. It bears the unmistakable evidence of having been altered in a material matter by the court in his own handwriting, and is thereby calculated to potently affect the minds of the jury when attempting to reconcile it with instruction nine. It is not beyond reasonable conjecture that the jury may have disregarded the law correctly announced in instruction nine and followed that contained in erroneous instruction six, treating it as directing a verdict and proceeding to assess the damages resulting to the next of kin by the death of Bamrich, after deducting therefrom the amount of three hundred dollars paid by the Lake Shore Company. This is not an unreasonable assumption arising from the language used in instruction six. It did in most emphatic, terse terms either direct a verdict or at least assume the finding by the jury of a verdict in favor of appellee. After reciting the payment of $300 by the Lake Shore Company to appellee for desisting from further prosecution of the claim against it, this instruction concludes: *"then you shall deduct such sum and render a verdict for only the remainder."*

There is no qualification as to what the jury must find from the evidence before being justified in returning a verdict for appellee. They are in blunt, curt language directed to find a verdict for appellee for the remainder of the damage sustained after deducting the three hundred dollar payment of the Lake Shore Company. There is also a fatal implication in this instruction that in the opinion of the court the damages exceeded $300. This was clearly error neither palliated nor cured by any of the other instructions.

For the error in giving the sixth instruction the judgment of the Superior Court is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Mr. Presiding Justice BROWN:

I cannot agree with the majority of the court that this judgment should be reversed on account of the criticised instruction. While that instruction is undoubtedly technically erroneous, I do not think that with the other instructions given it could have possibly misled the jury. Therefore, I do not think that it furnishes any sufficient reason for reversing the judgment.

I do not, however, dissent from the conclusion, because as the cause must be again submitted to a jury, I do not wish to express any opinion on its merits. Such an opinion would be implied in a statement that the judgment should be affirmed.