## Nellie Sullivan, Appellee, v. William E. Sullivan et al., Appellants.

### Gen. No. 4,926.

1. EVIDENCE—*when immaterial, properly admitted.* Evidence in itself immaterial may be competent if inseparably interwoven with a material conversation.

2. INSTRUCTIONS—*must limit jury to law and evidence.* An instruction is erroneous which gives the jury a license to do what they think is right, independent of the rules of evidence governing the situation.

3. INSTRUCTION—*when upon preponderance of evidence erroneous.* An instruction upon the subject of the preponderance of the evidence is erroneous which omits important elements which should be considered by the jury in determining where the preponderance lies, such as candor or lack of candor, bias or lack of bias, on the part of the witnesses. Such an instruction is seriously bad where it does not call the attention of the jury to the element to be considered as to the number of witnesses upon the respective sides where the number of witnesses upon one side preponderates greatly over those testifying upon the other.

Assumpsit. Appeal from the Circuit Court of McHenry County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this

Sullivan v. Sullivan.

court at the October term, 1907. Reversed and remanded. Opinion filed March 11, 1908.

C. P. BARNES, for appellants.

V. S. LUMLEY, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

William B. Sullivan died October 28, 1904, leaving him surviving Nellie Sullivan, his widow, and a large family by a former wife, of whom William E., Charles and Joseph Sullivan are appellants here. On November 30, 1904, Nellie Sullivan received a draft for $1,000, the amount of an insurance policy carried by deceased in the Catholic Order of Foresters in which she was named the beneficiary. She indorsed the draft and turned it over to William E. Sullivan, who, near the first of December, paid to E. M. Patrick the sum of $1,000 and received therefor a receipt and certificate of release of the name of William B. Sullivan on a $2,500 note given by the Sullivan brothers, and the payment of which their father had guaranteed.

On June 6, 1906, Nellie Sullivan instituted this suit in assumpsit in the Circuit Court of McHenry county against William E., Charles and Joseph Sullivan, to recover the $1,000 with interest thereon, and filed a declaration containing the common counts. The defendant interposed the plea of *non assumpsit* and a verified plea of non-joint liability. There was a trial and a verdict for $1,107.27 in favor of plaintiff. A motion for a new trial was denied, judgment was entered on the verdict, and this appeal was taken.

Appellee's contention is that the transaction in relation to the draft between herself and the Sullivan brothers was a loan for which they were to give her their note, but appellants claim it was a gift.

Appellee testified that William E. Sullivan asked her to let them have the $1,000 insurance money when she got it, and she said she would loan it to them for one year at 5 per cent until they could get straightened up. In corrobora-

tion of her testimony, she produced as witnesses appellant William E. Sullivan and Mr. Casey. A careful examination of their testimony leads us to the conclusion that it in no material particular corroborates her statement that the transaction was a loan.

On behalf of appellants, Bessie Sullivan testified that appellee told her she was going to give John, Will, Joe and Charlie the insurance money and that she didn't want a thing for it. John F. Sullivan testified that she told him she was going to give the four boys the insurance money of $1,000 and that later she told him she had given the boys the $1,000. William E. Sullivan denied that he ever asked for a loan of the $1,000, or that he borrowed the same from appellee, and added that she said, "Will, I have a check from the Foresters. I don't need it. You boys can have it," and that she also said, "I am going to give you boys this insurance money"; that she handed him the draft, and said, "I make you boys a present of this"; and that she later said to him, Charlie and Joe, "The check I gave Will, the other day, I want you three boys to have it." Charles and Joseph Sullivan corroborated William as to this last conversation. Vernie Sullivan testified that when appellee handed William Sullivan the check she said, "Here, Will, is a check; you boys may have it." Lawrence Sullivan testified that he saw appellee hand William a paper the size of a draft or check, and that she said, "That was a check for $1,000. I have given it to Will," or Will and the boys. Hattie Sullivan testified that appellee told her she had given the boys $1,000 insurance money. Philip Sullivan testified that appellee told him John was jealous because she didn't give him any of the $1,000 insurance money she gave to Joe, Will and Charlie. One Hendricks and William E. Sullivan testified that at a meeting in lawyer Casey's office in June, 1905, Casey asked Mrs. Sullivan if she had given the boys the $1,000 insurance money, and she said she had. On cross-examination, Casey admitted hearing her at that time say something about making a present in which she mentioned the sum of $1,000. John Sullivan also testified that at

Sullivan v. Sullivan.

the meeting in Casey's office, Casey said to Mrs. Sullivan, "What about this insurance money?" And she said she had given it to her three boys.

It appears from the record that much evidence was introduced showing the money appellee had when she married appellants' father, and that he obtained possession thereof, and gave a note therefor which was lost and could not be found after his death, and that she filed a claim against her husband's estate thereon, and that there were a number of unsettled matters between appellee and the estate, and that afterwards there was a compromise effected by which she yielded various portions of her demands and was paid an agreed amount; also efforts were made to show that she had been induced to sell her homestead and dower interests at a price apparently disadvantageous to her. This proof was mostly admitted without objection. So much of this evidence as was interwoven with and a part of the conversation relative to the $1,000 draft, was competent, but wherein it was not so interwoven with conversation between appellants and appellee relative to the drafts it was immaterial.

It appears from the record that appellants, their brother John, appellee, Mr. Hendricks and a number of other persons in May, 1905, had a meeting in the office of lawyer Casey at Woodstock for the purpose of arranging a settlement of their differences, growing out of the administration of the estate and appellee's claims against the estate, at which time the subject-matters just referred to and the $1,000 draft for the insurance money were discussed. We are therefore of the opinion that the proof in regard to these different matters was competent.

As this judgment must be reversed for errors of law and another trial had, we refrain from expressing an opinion on the merits of the case, except to suggest that a clear preponderance of the proof seems to be with appellants. With the state of proof above indicated, the court gave at the request of appellee a number of instructions now complained of by appellants.

Appellee's 6th instruction reads as follows:

"The jury are instructed that in an action like this for money had and received, proof of two things only are necessary: First, that the defendants received the one thousand dollars in question from the plaintiff, and second, that in justice and as a matter of right the defendants should pay it back to her, and if the jury believed from all the evidence, facts and circumstances proven on the trial that the defendants did receive the one thousand dollars from the plaintiff, and that in justice and as a matter of right they should pay it back to her, then you should render a verdict in favor of the plaintiff and assess her damage at such sum, if any, as the evidence shows she is entitled to recover."

This instruction advised the jury that they were at liberty to settle all the equities between appellants and appellee and the estate of William B. Sullivan, deceased, and gave them a license to do what they thought was right, independent of the rules of law governing the situation. If it be true that appellee gave this draft to appellants and they reduced the proceeds to their possession (as they did) then the gift was complete and no suit would lie to recover it, no matter how much appellee may have been wronged or overreached in her other financial dealings with appellants.

Appellee's 5th instruction reads as follows:

"The jury are instructed that the greater weight of the evidence is not alone determined by the greater number of witnesses testifying to any fact or set of facts, but in determining where the greater weight of the evidence is, you may take into consideration the opportunities of the witnesses for seeing and knowing what they testify to or about, the probability or improbability of its truth, and you may also take into consideration the connection, if any, between the witnesses and the parties, their interest in the result of the suit and their conduct while testifying."

The objection to this instruction is that it told the jury some of the things they were to consider in determining on which side the preponderance of the evidence lay but wholly omitted the number of witnesses. In the case of

E., J. & E. Ry. Co. v. Lawlor, 229 Ill., 621, the court in discussing an instruction containing these words, "The jury are instructed that the preponderance of the evidence in a case is not necessarily alone determined by the number of witnesses testifying to a particular fact or state of facts," after reviewing the previous holdings on instructions containing the same statement, said, "We do not think it can be said this court has given its unqualified approval of this instruction or that it might not be misleading in a case where the question of numbers was important and no other instruction was given to supplement it." In this case this instruction was not supplemented, and it is apparent that the number of witnesses was important. They stood as a matter of fact in the ratio of one to ten, and the number should have been considered by the jury. The instruction was also bad in that it omitted other elements, such as candor, or lack of candor, bias or lack of bias, of the witnesses.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*