## Arend Van Vlissingen, Appellee, v. Pabst Brewing Company, Appellant.

### Gen. No. 17,097.

1. PLEADING—*when variance between declaration and proof is ground for motion to strike evidence.* Where plaintiff sues to recover for services rendered in the settlement of conflicting claims concerning a certain street, and the declaration consists of the common counts and a count alleging that the services were reasonably worth $1,000, and another count alleging that defendant is indebted to plaintiff in the sum of $1,000 for services performed, there being no count to support an action for the breach of an express contract, and no evidence to support a recovery on a *quantum meruit*, a motion to strike out the evidence on the ground that there was a variance between the declaration and the proof is improperly denied.

2. INSTRUCTIONS—*where instruction eliminates consideration of number of witnesses.* An instruction enumerating the elements the jury should consider in determining the preponderance of the evidence, and omitting any reference to the number of witnesses where the number is important, is erroneous.

Appeal from the County Court of Cook county; the Hon. LOUIS M. RECKHOW, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed April 3, 1913.

LACKNER, BUTZ & MILLER, for appellant.

LEVERING & VON REINSPERG, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Arend Van Vlissingen, hereinafter called plaintiff, recovered a judgment for $1,000 against the Pabst Brewing Company, a corporation, hereinafter called defendant, which has been appealed to this court. Plaintiff brought suit to recover for services claimed to have been rendered for the defendant in connection with the settlement of conflicting claims concerning a certain street in Chicago, known as Front street.

The declaration consists of the common counts and a count alleging that the services rendered were reasonably worth $1,000, and another count alleging that the defendant is indebted to plaintiff in the sum of $1,000 for services performed in and about securing the opening of said Front street. No evidence was introduced to show the reasonable value of the alleged services, the theory of the plaintiff being that there was an express contract fully executed, and that nothing remained to be done except to pay the money; hence he could recover under the common counts.

The facts disclosed by the record are that an ordinance had been passed providing for the opening of South Park avenue from 115th street south to Kensington avenue, and a petition had been filed by the city for the confirmation of a special assessment to defray the cost of the same. Plaintiff was interested, together with a man named Wood, in twenty acres of land which was, with other property, assessed in that proceeding, and had filed objections to the assessment. A short distance from the proposed street opening there existed a thoroughfare known as Front street, which was partly occupied by the tracks of the Illinois Central railroad. A part of this thoroughfare was used by the public as a street, but the railroad claimed the whole of said thoroughfare as a part of its right of way, and it had leased that part used by the public to the City of Chicago at a nominal rental. The defendant owned or was interested in certain property

fronting on Front street, which property had also been assessed for the proposed opening of South Park avenue. It too had filed objections to the assessments through its attorney, Mr. O'Connor. During the pendency of the special assessment proceedings Wood, who was represented by plaintiff, also acquired an interest in certain property fronting on Front street. In preparing for the defense of the special assessment proceeding, both the plaintiff and the defendant's attorney, O'Connor, conceived the idea that if it could be established as a fact that Front street was a public street belonging to the city, upon which the railroad company had no rights, the city authorities or the court would be convinced that the opening of South Park avenue was unnecessary and that the ordinance for the same would be unreasonable and void, and thereby could defeat the assessment suit. O'Connor, acting for the defendant, had already taken steps before the board of local improvements for the purpose of convincing the city authorities that Front street was a public street and that the special assessment proceedings should be abandoned. The plaintiff, for the purpose of preparing a defense for himself and Wood to the South Park avenue assessment suit, did considerable work in investigating old records, proceedings and maps touching Front street, and secured considerable information regarding the same and became convinced that Front street was a public street and not a part of the Illinois Central right of way. It then occurred to him that if he succeeded in defeating the special assessment proceeding and establishing the rights of the city in Front street, other persons besides himself and Wood would be benefited. He concluded, therefore, to solicit contributions from the property owners on Front street, and for this purpose approached the Chicago manager of the defendant.

A considerable portion of the record is filled with the testimony of witnesses touching what, if anything,

was promised by the defendant to the plaintiff as a contribution for the services rendered by him as above described. The evidence tended to show that in the fall of 1907 O'Connor had told plaintiff that the defendant would pay if Front street was opened or held to be a street, and South Park avenue defeated, the sum of $1,000, but that about ten days after this the plaintiff was informed that this offer was withdrawn, and that plaintiff had replied, "All right; I am going to fight this case even if I have to do it alone."

As we have concluded to remand this cause, we shall not attempt any statement of the conflicting evidence as to what services, if any, were in fact rendered by the plaintiff in and for the defendant. There is a considerable body of testimony tending to show that what was accomplished in the matter would have been accomplished without any assistance or aid from the plaintiff. However this may be, we are considering only, at this point, whether or not there was an express contract as claimed by plaintiff. On November 3, 1909, plaintiff wrote to the defendant a letter giving his statement of the transaction. It is somewhat lengthy, and it must suffice to say that it tends strongly to corroborate the claim of defendant that the offer to pay the $1,000 above referred to was merely a voluntary act on the part of the defendant and was withdrawn a very short time thereafter. Our conclusion, after a careful consideration of the evidence, is that plaintiff failed to prove the existence of any express contract between him and the defendant.

At the close of the plaintiff's evidence the defendant moved the court to strike out all the evidence on the ground that there was a variance between the declaration and the proof, there being no count to support an action for the breach of an express contract, and there being no evidence to support a recovery on a *quantum meruit*, and to instruct the jury to find for the defendant. We think this motion should have been allowed. Plaintiff having failed to prove an express

contract, and having failed to introduce any evidence as to the reasonable value of the services said to have been rendered, was not entitled to go to the jury upon the counts in his declaration as filed. It should be noted in this connection that even according to plaintiff's contention the defendant had repudiated the alleged contract in September, 1908, which was before all the alleged services had been rendered, that is, before the alleged contract had been executed on the part of the plaintiff and before the alleged results agreed upon had been accomplished; so that according to plaintiff's own statement of the case, the contract had been only partly executed at the time the offer of the defendant to contribute was withdrawn.

Complaint is also made of an instruction given by the court at the request of the plaintiff touching the elements which should be taken into consideration by the jury in determining where the preponderance of the evidence lies. This instruction in part is as follows:

"The jury are instructed that the fact that the number of witnesses testifying on one side is larger than the number testifying on the other side, does not necessarily alone determine that the preponderance of evidence is on the side for which the larger number testified. In order to determine that question, the jury must be moved by and take into consideration," etc.

Then follows the enumeration of a number of elements, omitting entirely any reference to the number of witnesses. It is true this instruction is practically a copy of one given in Elgin, J. & E. R. Co. v. Lawlor, 229 Ill. 621, where the Supreme Court declined to reverse the judgment on that account, but in that case the court said in substance that it might be misleading in a case where the question of numbers was important, and where no other instruction was given supplementing it, indicating that in that case the question of numbers was not important and that other instructions supplementing the one in question had been given. This is not the situation in the case before us. The

number of witnesses was important, and we are referred to no other instruction supplementing the one in question. The giving of this instruction has been held reversible error in Chicago Union Traction Co. v. Hampe, 228 Ill. 346, and Sullivan v. Sullivan, 139 Ill. App. 378.

For the reasons above indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE FITCH having been one of the attorneys in the special assessment proceedings described in this opinion, took no part in the consideration of the case.