## Fernando Meunier, Appellee, v. Chicago & Carterville Coal Company, Appellant.

1. MINES AND MINERS—*when no liability for injury from falling of coal.* If falling coal which injured a miner came from the face of the room in which he was working and was of a kind which would have been taken down by him in the usual course of his work, there is no legal liability for the injury received.

2. INSTRUCTIONS—*when should be accurate.* Where the question whether props and caps for use in a mine were demanded and whether they were furnished on demand is vital, instructions concerning that question should be accurately drawn and given.

3. MINES AND MINERS—*what instruction as to delivering props as required erroneous.* An instruction to the effect that the owner, etc., of every coal mine shall keep props and cap pieces on hand and deliver them as required, is erroneous when the accident in question occurred when the Act of 1899 was in force, since under that act the demand for the props must come from the miner.

4. MINES AND MINERS—*instructions as to props.* An instruction is not accurate under the evidence where it states that the mine manager shall always provide a sufficient supply of props on the miners' cars, when demanded, as nearly as possible in suitable lengths and dimensions for securing the roof, when the evidence does not show that any particular length of props was demanded though the statute requires the miner to designate the length and size thereof.

5. MINES AND MINERS—*when miner cannot complain if timbers are not of suitable length.* The Mines and Miners' Act requires a miner to designate the length and size of timbers he wishes to use and, if no timbers of a particular length are demanded, the miner cannot be heard to complain if the timbers are not of suitable length.

6. DAMAGES—*suffering or pain.* In an action for personal injuries, an instruction that the jury in passing on the question of damages can consider any future suffering or pain is not accurate since the element of pain should be confined to physical pain.

7. INSTRUCTIONS—*preponderance of evidence.* Where witnesses in an action by a miner for personal injuries give directly opposite testimony and the greater number support defendant's theory, it is error to instruct that the preponderance of the evidence is not determined alone by the number of witnesses who testify, but that the jury are to determine the preponderance "in accordance with the way in which it appears to their minds."

Appeal from the Circuit Court of Williamson county; the Hon. BENJAMIN W. POPE, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed April 23, 1913.

DENISON & SPILLER, for appellant; MASTIN & SHER-LOCK, of counsel.

NEELY, GALLIMORE, COOK & POTTER, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action of case brought by appellee against the Chicago & Carterville Coal. Company, appellant, to recover damages for an injury to appellee while he was employed as a miner by appellant.

The case was tried on issues formed on the first, third and fourth counts of the declaration, each of which alleges a wilful violation of the mining statute. The first count charges that the defendant wilfully failed to provide a sufficient supply of props, caps and timbers at the usual place in plaintiff's room when demanded and that as a result thereof a great quantity of coal, slate and rock fell from the roof of the said room striking the plaintiff and injured him. The third count charges that the defendant wilfully failed to place a conspicuous mark at room 6 (plaintiff's room) as notice to all men to keep out, and that by reason thereof plaintiff entered the room to work and was injured. The fourth count charges that the defendant wilfully permitted the plaintiff to enter said room to work therein, under the direction of the mine manager while the same was in dangerous condition and that as a result thereof the plaintiff was injured.

Upon the trial of the case in the Circuit Court of Williamson county, the jury found appellant guilty and assessed appellee's damages at $3,000. Motion for new trial was overruled and judgment rendered upon the verdict, from which judgment an appeal is prosecuted to this court.

116    APPELLATE COURTS OF ILLINOIS.

Meunier v. Chicago & Carterville Coal Co., 180 Ill. App. 114.

From the evidence it appears that plaintiff, Fernando Meunier, and his brother, Emil Meunier, were employed as coal miners and worked in room No. 6, on the fourth southeast entry in defendant's mine; that room No. 6 had been driven in about 120 feet from the entry and connected with the adjoining room by cross-cuts; that the top coal was left up for a roof to protect the miners in the rooms off the entry and in this particular room the top coal was from eighteen inches to two feet in thickness; that it was of a brittle nature, or as was termed by some of the miners, it was "tender," so that it required propping for safety.

The evidence on the part of the plaintiff tended to prove that the injury was caused by the fall of top coal from a point in the roof twelve or fourteen feet back from the face of the room and two or three feet to the right of the track; that upon the morning of the injury the plaintiff and his brother had loaded six cars of coal and had commenced to load another car when the accident happened, shortly after noon. Plaintiff testified that he was entering the room after lunch when the top coal fell on him just as he was passing the car; that the coal fell on the car and bounced off and struck him on the leg, breaking it. The plaintiff, his brother and a witness by name of Peter Roland testified that about half a car of top coal fell on the right hand side of the track, twelve or fourteen feet back from the face and caused the injury; they also testified that there were no cap pieces in the room, and plaintiff testified there were no long props in the room. Plaintiff and his brother testified they had ordered caps from the mine manager several days before the accident but none had been delivered. No one testified that props of any particular length had been ordered.

The evidence on the part of the defendant directly contradicts the evidence of the plaintiff's witnesses

in essential points. The mine manager, Bob Waugh, testified he was in the room with the witness Roland, above referred to, and that said Roland pointed out to him a piece of coal about 75 or 100 pounds weight, that had fallen out of the face of the room near the right hand corner, and told the mine manager that it was the coal that injured the plaintiff. Waugh also testified that that was the only piece of coal there was down in the room, and that it had fallen out of the face of the room at a point just under the regular top coal.

The superintendent, James G. Ney, the mine examiner William Maxwell, and two miners, George Sirles and Harry Jarvis, all went into the room with the mine manager shortly after the accident and made an examination of the room to determine the cause of the accident. They all testified that the coal fell out of the face of the room at a point just under the top coal and that the coal which had fallen would weigh from 75 to 150 pounds, and that it was not a part of the coal that would be left up for a roof, but it was a part of the face of the coal that would have been mined down by the miner in the progress of his work. These witnesses said that they found the room was well propped up to within six feet of the face by actual measurements. They also testified of a pile of eighteen props lying at the usual place in the room about nine feet long. Two of these witnesses, Mr. Buiney. and Mr. Waugh, testified they counted ten or twelve cap pieces lying in the room near the props.

A trial was had of this case once before in which the jury failed to agree. At the last trial of this case a brother of plaintiff testified that there were no nine foot props in the room. As impeaching evidence the defendant called the official reporter as a witness and she testified from her stenographic notes that on the first trial the plaintiff and his brother made different statements from the ones made at the last trial con-

cerning the length and number of props. There were three witnesses for the plaintiff who testified to the conditions of the room and the place where the coal fell and the number of props. On material points there were five witnesses for the defendant who testified directly contrary to the testimony of the plaintiff's witnesses.

It was very important to a proper determination of the case to know where the coal that fell upon the plaintiff came from; whether it came from the face of the room, as claimed by the defendant, or twelve or fourteen feet back from the face, as claimed by plaintiff. It is not claimed by the defendant that the mine manager placed any conspicuous marks indicating dangerous conditions anywhere in that room. The mine manager testified there were no dangerous conditions appearing when he examined the room. If, as contended by the defendant, the falling coal which injured the plaintiff came from the face of the room and was of the kind which would be taken down by the miner in the usual course of his work in mining coal, there could be no legal liability for the injury received. This contention is tacitly admitted by the plaintiff. The evidence clearly shows that there were sufficient number of props in the room at the time plaintiff was injured. When all the evidence on that question is considered there can be no other conclusion of a reasonable mind than that the props were there in sufficient numbers. The evidence is not so conclusive with reference to caps.

Under the statute in force at the time of this accident it was the duty of the coal company to furnish props, caps or timbers to the miner whenever demanded, but it was the duty of the miner to properly prop and secure his place with the material when furnished. The question whether or not props and caps had been demanded and whether or not they had been furnished on demand was a very vital one, and the instructions directed to that branch of the case

Fourth District—April, 1913.     119

Meunier v. Chicago & Carterville Coal Co., 180 Ill. App. 114.

should have been accurately drawn and given. *Witt v. Gallemore*, 163 Ill. App. 649; *City of Chicago v. Sutton*, 136 Ill. App. 221; *Chicago, R. I. & P. R. Co. v. Turck*, 131 Ill. App. 128.

Appellant complains of instruction No. 3, given for appellee. This instruction tells the jury "that the law provides that the owner, agent or operator of every coal mine shall keep a supply of timber constantly on hand of sufficient lengths and dimensions to be used as props and cap pieces and shall deliver the same as required on the miner's cars, at the usual place, so that the workmen may at all times be able to properly secure the workings for their own safety, and that a right of action shall accrue to a party injured for or because of a wilful violation or wilful failure to comply with the provisions of this law." This instruction does not correctly state the law as it existed at the time of the accident. The Statute of 1899 was then applicable which provides that "the mine manager shall always provide a sufficient supply of props, caps and timbers delivered on the miner's cars at the usual place when demanded." The demand must come from the miner. He must designate the kind of timber he needs to prop his room. Under this instruction the jury could readily have found that the defendant had wilfully violated the statute because there was need of props and caps, although no demand had been made for them by the miner.

The Appellate Court of the Third District in the case of *Thompson v. Dering Coal Co.*, 158 Ill. App. 289, when considering an instruction in which the words "required" and "demanded" were used interchangeably as relating to the statutory duty of the owner or operator of a coal mine, said: "In its common acceptation the word 'required' is not a synonym for the word 'demanded' as employed by the statute. The former may relate to a condition arising by implication, and is more commonly used as synonymous

120     APPELLATE COURTS OF ILLINOIS.

Meunier v. Chicago & Carterville Coal Co., 180 Ill. App. 114.

with 'necessary,' while the latter in the sense in which it is employed in the statute relates to an express overt act.'' The court there holding that an instruction where the word "required" was used instead of the word "demanded" constituted error.

Complaint is also made of the ninth instruction which was given at the instance of the plaintiff. This instruction told the jury that ''the mine manager shall always provide a sufficient supply of props, caps and timbers on the miner's cars at the usual place when demanded as nearly as possible in suitable lengths and dimensions for the securing of the roof by the miners.'' It is contended by appellant there is no evidence from any witness that any particular length of props, caps and timbers were demanded, and that this instruction telling the jury that they should be of suitable lengths would leave it for the jury to determine what lengths were needed. The statute requires the miner to designate the length and sizes of the timbers he wishes to use in his room and if no timbers are demanded of a particular length the miner cannot be heard to complain if the timbers are not of the length suitable to properly prop the roof. This instruction was not accurate under the evidence.

The tenth instruction given for the plaintiff told the jury that in passing upon the question of damages they could consider ''permanent disability, if any, of the plaintiff, caused by said injuries and any future suffering or pain,'' etc. This instruction should have confined the element of pain to physical suffering. Mental suffering occasioned by crippled condition is not a proper element to be considered in estimating damages in such a case. This instruction was not accurate.

Complaint is also urged against instruction No. 11, wherein it was sought to tell the jury the meaning of the expression ''preponderance of the evidence.'' This instruction states, ''The preponderance of the evidence is not determined alone by the number of

witnesses who testify, but this is an element to be considered; but you are to determine where the preponderance of the evidence is, in accordance with the way in which it appears to your minds; and when you can say the greater weight of the evidence is upon one side or the other, then you have determined upon which side the evidence preponderates.'' No test is given in this instruction by which the jury could determine the weight to be given to the testimony of the various witnesses. They are not told all of the elements which should be taken into consideration in weighing the testimony of witnesses. They are simply left to determine where the preponderance of the evidence is ''in accordance with the way in which it appears to their minds,'' which is equivalent to telling the jury they may find the evidence preponderates according to their notion as to what tests should be applied in passing upon the weight of evidence.

If the juries are told that the law permits them to find the preponderance of the evidence ''in accordance with the way it appears to their minds,'' it would free them from the rule which requires the consideration of many elements that are essential to determine where the preponderance of the evidence lies. The greater number of witnesses testifying in the case supported the theory of the defendant that the coal which injured the plaintiff fell from the face of the room, that there were plenty of props, and that the room was well propped to within six feet of the face of the coal. The witnesses for the plaintiff, being fewer in number, testified opposite to those testifying for the defendant. Under this state of facts the law requires that the instructions should accurately state the rules of law which should govern the jury in passing upon the weight of the evidence. This instruction as given was clearly erroneous. *Sullivan v. Sullivan,* 139 Ill. App. 378; *Elgin, J. & E. R. Co. v. Lawlor,* 229 Ill. 621; *Lyons v. Ryerson & Son,* 242 Ill. 409.

Complaint is made of a number of other instructions which were given on behalf of the plaintiff, some of which are not accurately drawn so as to present a correct rule of law to govern the jury in passing upon the evidence, but the considerations above expressed are deemed by this court sufficient to require a reversal of this case and we will not enter at length in a discussion of the further instructions or other errors assigned on this record, since the case will have to be remanded for another trial.

For the errors indicated, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*